[Crim. No. 1143.    In Bank.—June 14, 1904.]

## Ex Parte F. A. JACKSON, on Habeas Corpus.

MUNICIPAL CORPORATIONS — LICENSE-TAX FOR REVENUE — POWERS OF CITIES OF SIXTH CLASS — REPEAL BY IMPLICATION.—A municipal corporation of the sixth class was empowered by the amendment of March 9, 1903, to section 862 of the Municipal Incorporation Act to impose license-taxes for revenue; and that amendment being a valid exercise of legislative power, operated to repeal by implication section 3366 of the Political Code so far as respects its application to cities of the sixth class.

ID.—CONSTITUTIONAL LAW—SPECIAL LEGISLATION—GENERAL LAW.—The fact that the amendment of 1903 is applicable only to one of the six classes of municipal corporations provided for by the Municipal Incorporation Act does not make it a special law in the sense contemplated by the constitution. So long as 'the legislation as to municipal affairs contained in a municipal charter operates alike upon all municipal corporations coming within the class for which the charter exists, it is a "general law" fully authorized by section 6 of article XI of the constitution.

ID.—"MUNICIPAL AFFAIR."—A provision in a charter authorizing a municipality to impose a license-tax for purposes of municipal rev-

enue is a "municipal affair," and within the proper scope of a municipal charter.

Id.—Privileges and Immunities of Citizens.—A license ordinance applying equally and uniformly to all persons engaged in the same business within the municipality is not subject to the objection that it grants special privileges and immunities in violation of section 21 of article I of the constitution.

Id.—Criminal Law — Complaint — Alternative Averment — Habeas Corpus.—A criminal complaint for violation of an ordinance imposing a license-tax which charges the defendant with having conducted "a livery or feed stable," though uncertain in that respect, if it otherwise states a public offense, does not show a defect available upon *habeas corpus.*

WRIT OF HABEAS CORPUS to the Marshal of the City of Whittier, County of Los Angeles, holding the petitioner under a judgment of conviction in the recorder's court. W. R. Bunting, Recorder.

The facts are stated in the opinion of the court.

M. T. Owens, and Henry M. Willis, *Amicus Curiæ,* for Petitioner.

George H. Woodruff, City Attorney, and F. A. Leonard and Ralph E. Spring, *Amici Curiæ,* for Respondent.

ANGELLOTTI, J.—The petitioner seeks by this proceeding to obtain his discharge from the custody of the marshal of the city of Whittier, in Los Angeles County, by whom he is held under a judgment of the recorder's court of said city, pronounced upon his conviction of the offense of engaging in the business of conducting or carrying on "a livery or feed stable" in said city without first having procured a license so to do, as required by the provisions of an ordinance adopted by the board of trustees thereof on April 6, 1903.

An examination of the ordinance demonstrates that it is almost entirely a revenue measure, and that certainly, so far as the provisions applicable to the business carried on by petitioner are concerned, it fails to suggest any exercise of police power, and that its sole object in that regard was to impose a license-tax for revenue only.

The ultimate question in this proceeding is as to the power of said city to impose license-taxes for revenue purposes.

The city of Whittier is a municipal corporation of the sixth class, organized and existing under the provisions of the act of the legislature entitled "An act to provide for the organization, incorporation, and government of municipal corporations," approved March 13, 1883, (Stats. 1883, p. 93,) commonly known as the "Municipal Corporation Act," and the amendments thereto.

That act, after providing for the organization and incorporation of municipal corporations thereunder, provides a form of government and charter for each of the six classes of municipal corporations into which the municipal corporations of the state are classified, in proportion to population, by the act of the legislature entitled "An act to provide for the classification of municipal corporations," approved March 2, 1883, (Stats. 1883, p. 24,) and the amendments thereto (Stats. 1901, p. 94).

By the Municipal Corporation Act, as originally adopted, power to impose license-taxes for revenue was conferred upon the municipal corporations of each of the six classes. The provisions conferring such power were, however, superseded by section 3366 of the Political Code, enacted March 23, 1901. (Stats. 1901, p. 635; *Sonora* v. *Curtin*, 137 Cal. 583; *Santa Monica* v. *Guidinger*, 137 Cal. 658.)

On March 9, 1903, section 862 of the Municipal Corporation Act, relating to the powers of the boards of trustees of cities of the sixth class, was amended by the legislature so as to confer upon such cities the power to license for purposes of revenue as well as regulation (Stats. 1903, p. 93), and, if such amendment was a valid exercise of the legislative power, it superseded section 3366 of the Political Code, so far as the application of such section to cities of the sixth class is concerned.

From the foregoing it will be perceived that the real question in this proceeding is as to whether the legislature of the state, having classified the municipal corporations in the state in proportion to population, could under the provisions of the constitution, by amendment of the Municipal Corporation Act, vest in the corporate authorities of the municipalities of the class composed of the cities and towns having the smallest population, the power to impose and collect license-taxes for municipal revenue purposes, while withholding such

power from the municipalities of some or all of the other classes.

Such license-taxes for revenue are "taxes," within the meaning of section 12 of article XI of the constitution (*People* v. *Martin*, 6C Cal. 153), and the power to collect them can therefore be vested in municipalities only by general laws.

The constitution contains other provisions prohibiting special legislation in regard to many matters, and doubtless some of them cover the subject-matter of the legislation in question, and would render it invalid, if it be a special law in the sense contemplated in the constitution.

The fact, however, that the act of the legislature is applicable to only one of the six classes of municipal corporations provided for by the Municipal Corporation Act does not necessarily make it a special law.

The Classification Act of March 2, 1883, and the Municipal Corporation Act of March 13, 1883, were adopted by the legislature under the provisions of section 6 of article XI of the constitution. Prior to the adoption of the constitution of 1879 municipal corporations had been created solely by, and existed under, special acts of the legislature, which could be at any time amended or repealed by that body. It was designed by the framers of the constitution to do away with the practice of creating such corporations by special laws, and to prevent the legislature "from singling out a particular town or city and passing legislation affecting it and no other." Therefore, it was provided by section 6 of article XI of the constitution as follows, viz.: "Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization, and classification, in proportion to population, of cities and towns, which laws may be altered, amended, or repealed. Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith; and cities and towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, *except in municipal affairs,* shall be subject to and controlled by general laws." The italicized words were added by way of amendment in the year 1896.

By this section a scheme was provided by which, in lieu of the old system of creation of municipalities by special acts of the legislature, municipalities might be organized and exist under general laws to be adopted by the legislature for that purpose, and any municipality already organized and existing under special act might, if its electors so desired, reorganize under such general laws.

It being recognized that cities containing different populations would by reason thereof require different powers and different legislation as to their municipal affairs, the section provided not only for general laws as to incorporation and organization, but also authorized a classification in proportion to population of such cities and towns, the plain object thereof being, that the legislature might thus be enabled to supply the general laws required by the varying needs of the municipalities so classified. As was said in *Rauer* v. *Williams,* 118 Cal. 401, the power to so classify thus conferred would be meaningless, unless the classifications made were to be so employed. (See, also, *City of Pasadena* v. *Stimson,* 91 Cal. 238, 249.)

The purpose of the section, therefore, was to require the legislature to provide not only a general method of incorporation, but also the laws for the government of the municipalities so incorporated and such other municipalities as might choose to organize thereunder, and to permit such differences in those laws applicable to such cities as the legislature might deem necessary on account of varying needs caused by difference in population; in other words, to authorize the legislature to first make such classification in proportion to population of the municipalities that might thereafter organize under the general laws to be provided, as it should consider necessary to enable it to supply appropriate laws for the government thereof, and having made such classification, to provide for each class such a municipal charter as was considered by it to be necessary for cities of the population embraced within that class.

That the laws to be provided for the government of the cities of the various classes might differ materially was thus expressly recognized, and it was to authorize such differences that the provision as to classification was inserted. It was left entirely to the legislature to determine what differences in

the laws relative to the municipal affairs of the corporations to be organized under the general laws of the state were made necessary by differences in population.

The legislature has followed the method designed by the constitutional provision. The Classification Act was followed by the Municipal Corporation Act. Under the provisions of the latter act each class is given a separate and independent code of laws for the government of the municipalities that may come within its provisions. The forms of government provided by such act for the various classes, and the powers conferred thereby upon such classes are materially different in many respects.

The portion thereof entitled "Municipal Corporations of the Sixth Class," is also entitled "A charter for cities and towns having a population of not exceeding three thousand," and in fact is a charter for any municipality incorporated thereunder, in the same sense that a special act incorporating a city, adopted prior to our present constitution, or a free-holders' charter, adopted under section 8 of article XI of the constitution, is a charter, the only practical difference being, that it is subject to the control of the legislature, under the express provisions of section 6 of article XI of the constitution. It was enacted by the legislature as a charter for such cities and towns under the authority given by the last-named section, and so long as the matters regulated thereby are within the proper scope of a municipal charter, it cannot be held that the legislature has exceeded the authority so given, notwithstanding the fact that such regulations differ materially from those provided for other classes of cities and towns.

As to such matters,—i. e. matters coming within the proper scope of a municipal charter, or, in other words, municipal affairs,—there is a distinction recognized by the constitution between the various classes of municipal corporations, which justifies the varying legislation.

So long as the legislation as to such matters contained in such a charter operates alike upon all municipal corporations coming within the class for which the charter exists, it is under our constitutional provisions a "general law," fully authorized by section 6 of article XI of the constitution.

The cases relied on by petitioner are not in conflict with these views. The principal case is that of *City of Pasadena*

v. *Stimson*, 91 Cal. 238, where the question was as to the validity of provisions in the Municipal Corporation Act applicable to only two classes thereof, requiring as a condition precedent to the exercise of the right to maintain an action of eminent domain by cities belonging to these classes, an unavailing effort on the part of the city to agree with the owner as to the price to be paid for the property. It was held that this was an attempt to make a "forbidden discrimination against two classes of municipal corporations by imposing upon them alone a burdensome condition to the exercise of a right common to all public and private corporations and to all natural persons *sui juris* in the state." It was said in the opinion in that case that the mode of exercising the power of eminent domain, conferred by the laws of the state for any of the uses defined in section 1238 of the Code of Civil Procedure upon all public and private corporations and natural persons, was no part of municipal organization, but was the subject of general laws, applicable to every person alike, and that the legislature has no power to make arbitrary distinctions in this respect between different classes of persons.

The distinction between the provisions there invoked and provisions relating to a matter which is purely a municipal affair is manifest.

In *City of Tulare* v. *Hevren*, 126 Cal. 226, the controversy was as to the validity of a provision of the Municipal Corporation Act applicable only to cities of the fifth class, whereby it was provided "that it shall not be necessary in any action, civil or criminal, to plead or prove the . . . existence or validity of any ordinance thereof, and courts shall take judicial notice thereof without proof." Such a provision could not be said to come within the proper scope of a municipal charter, but was an attempt to provide a special rule as to pleadings and evidence in courts of justice, and was clearly violative of at least two provisions of our constitution.

The case of *Rauer* v. *Williams*, 118 Cal. 401, involved the question as to the validity of an act providing and regulating the manner of receiving and paying fees, etc., for official services in all cities and cities and counties having a population of over one hundred thousand inhabitants, whether or not such cities had become organized under the general Muni-

cipal Corporation Act as cities of the first class, to which class they would belong under the provisions of the Classification Act.

Thus it was sought by the act to create a class of municipalities, for the purpose of providing a special and peculiar method therein for the collection of fees for official services performed by county and other officers, the only distinction between those embraced in such class and other municipalities being one of population.

Conceding the right of the legislature, independently of the authority conferred to enact charters for the various classes of municipalities incorporated under general laws, to adopt an act applicable only to a class of municipalities created by the act itself, and including both those incorporated under general laws and those not so incorporated, it was held that where a class was specially created for the purpose of applying certain legislation thereto, there must be some apparent natural, intrinsic, or constitutional distinction warranting the distinction made.

The court was not there dealing with legislation adopted under the power conferred to frame municipal charters for the various classes of municipalities organized under the general laws.

The case of *Darcy* v. *Mayor,* 104 Cal. 642, presented practically a similar question to that presented in *Rauer* v. *Williams,* 118 Cal. 401, the act there involved being one relative to the salaries of police officers in all cities in the state having a population of not less than ten thousand and not more than twenty-five thousand.

This was a new class, not provided for by the Classification Act, but created solely for the purposes of the act involved, and the act was made applicable to all cities of the designated population, regardless of whether or not they were organized under the Municipal Corporation Act.

It is unnecessary to specially notice any of the other cases cited upon this point, but it may be said that wherever a statute limited in its operation to a class of cities less than all has been held to be violative of the constitutional provisions against special legislation, it has been so held either on the ground that the rule prescribed did not relate to municipal affairs or that the class to which the statute was intended to

apply was arbitrarily selected without regard to any natural or other classification contemplated by the constitution.

The right of the legislature to enact different regulations as to municipal affairs for the various classes of municipalities organized under the Municipal Corporation Act has never been denied.

It is now the settled law of this state that a provision in a charter authorizing a municipality to impose and collect a license-tax for purposes of municipal revenue is a "municipal affair," and within the proper scope of a municipal charter. (*Ex parte Braun,* 141 Cal. 204; *Ex parte Lemon, ante,* p. 558; *Ex parte Helm, ante,* p. 553.)

This being so, it would appear to necessarily follow that the legislature had the power to insert such provisions in regard thereto as it deemed necessary in all or any of the charters contained in the Municipal Corporation Act, and to "alter, amend, or repeal" the provisions as to all or any of the classes at will. It is for the legislature alone to determine what is needful for the respective classes in this regard, and with its determination the courts cannot interfere.

The act of March 9, 1903, amending section 862 of the Municipal Corporation Act, expressing the determination of the legislature as to the needs of municipalities of the sixth class in this regard, and operating uniformly upon all cities of that class, is, under the constitutional provisions already noticed, a general law.

The conclusion that such act is a general law within the meaning of our constitutional provisions practically disposes of all questions raised as to its constitutionality.

The fact that it is at variance with section 3366 of the Political Code, enacted March 23, 1901, restricting the licensing power of boards of supervisors and city councils to matters of regulation alone, is immaterial. That section was, it is true, a general law, and the legislature having the absolute right to alter, amend, or repeal any provision contained in the Municipal Corporation Act, the enactment of such section was a repeal by implication of the original provision in said act allowing municipal corporations of the sixth class to license for revenue. (*City of Sonora* v. *Curtin,* 137 Cal. 583, 588.)

But, by the express provisions of the constitution, the legis-

lature had the same right thereafter that it had before to still further alter, amend, or repeal the provisions of the Municipal Corporation Act as to any municipal affair, and any statute enacted in pursuance of this power as to any provision applicable to one or more classes is a general law, which necessarily repeals by implication all prior acts of the legislature as to the same subject-matter, so far as the provisions thereof are inconsistent with the later act. The power of the legislature to make peculiar provision as to any municipal affair for any class of cities and towns existing under the Municipal Corporation Act always exists, regardless of any prior action on its part. Section 3366 of the Political Code, although applicable by its terms to all municipalities in the state, was no more a general law within the meaning of our constitutional provisions than is the act of March 9, 1903, amending section 862 of the Municipal Corporation Act. There are no degrees of generality. A law is general or it is special. By virtue of the provisions of section 6 of article XI of the constitution the amendment of 1903 fulfills all the requirements as to generality, and, being the latest enactment, supersedes the provisions of section 3366 so far as municipal corporations of the sixth class are concerned.

We are unable to perceive the applicability to this case of section 21 of article I of the constitution, which provides that no citizen or class of citizens shall be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens.

It is not questioned that the license ordinance enacted by the city authorities applies equally and uniformly to all persons engaged in the business of carrying on in the city of Whittier a livery or feed stable. There is no privilege or immunity granted to one engaged in such business therein that is not possessed by all similarly situated. The complaint appears to be that others engaged in a similar business in some other cities cannot be subjected to a similar burden. Whether this is so or not, we do not know. It depends upon the provisions of the laws relating to the municipal affairs of such other cities. But it is entirely immaterial. It is enough to satisfy the provisions of section 21 of article I of the constitution that any citizen of the state or the United States may engage in the specified business in the city of Whittier upon

the same terms as any other citizen may engage in such business therein.

It is suggested that the complaint against petitioner was defective in that it charged him with having conducted and carried on a "livery *or* feed stable," the ordinance providing a license-tax for "every livery or feed stable." While the complaint was uncertain by reason of the use of the disjunctive "or," it did not entirely fail to state a public offense, and the defect is not available on *habeas corpus.*

From what has been said it follows that the writ must be discharged and the petitioner remanded, and it is so ordered.

Shaw, J., McFarland, J., Henshaw, J., and Van Dyke, J., concurred.

BEATTY, C. J., dissenting.—I dissent upon the grounds stated in my dissenting opinion in *Ex parte Braun,* 141 Cal. 204.

Lorigan, J., also dissented.