[S. F. No. 15596. In Bank.—January 14, 1936.]

RAY INGELS, as Director of Motor Vehicles of the Department of Motor Vehicles, etc., Petitioner, v. RAY L. RILEY, as Controller, etc., Respondent.

Paul Mason for Petitioner.

Edward M. Berol and Marvin Handler as *Amici Curiae* on Behalf of Petitioner.

Thomas H. Christiansen for Respondent.

Ivan Kelso, General Counsel, J. Allen Davis, Associate Counsel for Automobile Club of Southern California, Harold P. Huls, City Attorney (Pasadena), John W. Holmes, Deputy City Attorney, and J. R. Klawans, as *Amici Curiae* on Behalf of Respondent.

U. S. Webb, Attorney-General, Robert W. Harrison and James J. Arditto, Deputies Attorney-General, and G. E. Sandford, General Attorney, California State Automobile Association, as *Amici Curiae*.

THE COURT.—Petition for a writ of mandate to compel respondent, as state controller, to issue his warrant to the state treasurer authorizing the latter to pay a printing claim incurred by petitioner as director of the department of motor vehicles. The purpose of the proceeding is to secure an interpretation and to test the constitutionality of the Motor Vehicle License Fee Act. (Stats. of 1935, chap. 362, p. 1312.)

The precise problem involved arose under the following circumstances. By the terms of the act, the administration thereof is placed in petitioner's department. Petitioner interpreted the act as imposing a property tax on motor vehicles and concluded that veterans who properly qualified under section $1\frac{1}{4}$ of article XIII of the Constitution are entitled to an exemption from the tax, as therein provided. To facilitate the handling of such exemption claims, petitioner ordered from the bureau of printing certain forms. A claim for such printing, in due form, regularly approved by petitioner, was, as required by law, presented to respondent for his warrant therefor upon the state treasurer. Respondent refused to draw his warrant on the ground that, in his opinion, the tax is not a property tax, but a privilege or license fee, and that veterans under the above constitutional provision are not entitled to an exemption from such a tax. He, therefore, took the position that the charge for

the printing was illegal. The attorney-general, whose duty it is to advise both departments, confessed an inability to determine the nature of the tax, whereupon this proceeding was instituted. In addition to the parties to this proceeding, various *amici curiae,* including representatives of the veterans, of the city of Pasadena, of the larger automobile clubs, and of others have appeared in the action.

As between petitioner and respondent, almost the sole point presented is whether the act imposes a property or a privilege tax. The determination of this question requires an analysis of the provisions of the act. Section 1 provides that the term "vehicle" means every vehicle subject to registration under the Vehicle Code. (Stats. 1935, chap. 27, p. 93.) Referring to the Vehicle Code, it is provided in section 141 thereof that all motor vehicles, trailers or semi-trailers *when driven or moved upon the highways* be registered. Section 142 exempts nonresidents, dealers and transporters, and certain other limited groups.

Section 2 of the Motor Vehicle License Fee Act provides:

"A license fee is hereby imposed for the privilege of operating in this State any vehicle. The annual amount of such license fee shall be a sum equal to one and three-quarters per cent of the actual market value of such vehicle, as determined by the department. The department annually shall compile and publish a list showing the market values as determined by it of each class of vehicle subject to the license fee hereby imposed, such vehicles being classified by make, type and year of manufacture. The license fee imposed by this act shall not apply to any vehicle not subject to registration under the Vehicle Code, nor to any vehicle owned by the State, any political subdivision of the State, or any city, city and county, county, district or public corporation."

Section 3 provides that the license fee thus imposed shall be due and payable on January 1st of each year and shall be paid at the time of registration of the vehicle.

Section 4 provides that when a car is first registered after the end of January, the fee shall be reduced by one-twelfth for each month that has elapsed since the first of the year.

Section 5 provides:

"The license fee imposed under this act is in addition to any and all licenses and taxes otherwise imposed, except that

no tax according to value shall hereafter be levied or imposed upon any vehicle upon which is paid the license fee required by this act. Such vehicles are hereby exempted from all taxes, State, county or municipal, according to value levied for State or local purposes."

Section 6 provides in part:

"Whenever any vehicle is operated upon any highway of this State without the license fee having first been paid as required by this act, such fee is delinquent. If such fee is not paid within thirty days after the same becomes delinquent, a penalty equal to such fee shall be added thereto and be collected therewith.

"Every license fee and any penalty added thereto, from the date the same becomes due, constitute a lien upon the vehicle for which due."

The section further provides for the collection of the fee by seizure and sale of the vehicle under the same provisions providing for the seizure and sale by county assessors of personal property.

Sections 7 and 8 provide that the duty of collecting the tax is imposed on the motor vehicle department, and the sections confer upon the director of that department certain powers in connection therewith.

There are three sections entitled "Sec. 9." Section 9 first appearing provides that all moneys collected under the act shall be deposited to the credit of the motor vehicle license fee fund and shall be appropriated as follows:

(a) One per cent for the use of the department of motor vehicles in the enforcement of the act.

(b) Twenty-five per cent of the remainder to the cities of the state on a population basis. The section expressly provides: "The moneys so paid shall be expended by the cities and cities and counties for law enforcement and the regulation and control and fire protection of highway traffic."

(c) Twelve and one-half per cent of the remainder to counties and cities on a population basis without restriction as to use.

(d) The balance of the fund shall be transferred to the general fund of the state and, out of such moneys, there shall be set aside a sufficient sum to pay the interest and principal on certain designated state highway bonds.

Section 9, second appearing, provides that the fee provided by the act shall not be imposed after December 31, 1937.

The third section 9 has the usual provision concerning the effect of declaring any section unconstitutional.

█ We are first presented with the question as to the nature of the charge imposed by the above act. Is the charge provided therein a charge for the privilege of operating vehicles of the kind mentioned on the highways of the state, i. e., is the charge an excise or privilege tax, or is the charge in the nature of a tax on automobiles as personal property, i. e., a property tax? The distinction between a tax on a privilege and a property tax is many times a close one. Generally speaking, the function of a property tax is to raise revenue. Such a tax does not impose any condition nor does it place any restriction upon the use of the property taxed. A privilege tax, although also passed to raise revenue, and as such is to be distinguished from the license tax or regulatory charge imposed under the state's police powers, is imposed upon the right to exercise a privilege, and its payment is invariably made a condition precedent to the exercise of the privilege involved. (37 Cor. Jur., p. 171, sec. 9, and cases cited.)

█ It is impossible to lay down any positive rule by means of which the character of any given tax may be ascertained. In each case the character of the given tax must be ascertained by its incidents, and from the natural and legal effect of the language employed in the statute. (*Dawson* v. *Kentucky Distilleries & Warehouse Co.*, 255 U. S. 288 [41 Sup. Ct. 272, 65 L. Ed. 638] ; *Matter of Application of Schuler*, 167 Cal. 282 [139 Pac. 685, Ann. Cas. 1915C, 706].)

█ Applying these tests to the statute before us, we have no hesitancy in declaring that the charge involved is one imposed on the owners of motor vehicles for the privilege of using the highways of the state and is not, in nature, a property tax. Petitioner urges that it is a property tax, emphasizing that the basis of the tax is the value of the property involved, and that the act, by section 5, exempts such property from further taxation based on value. These considerations are of some importance in ascertaining the nature of the tax, and, in some cases, have been held to be

determinative. (*Vernor* v. *Secretary of State,* 179 Mich. 157 [146 N. W. 338, Ann. Cas. 1915D, 128] ; *Walker* v. *Bedford,* 93 Colo. 400 [26 Pac. (2d) 1051].)    However, we are of the opinion that the better rule is that the mode of ascertaining the amount of the tax is not conclusive. We are of the opinion that if a tax in its nature is a privilege tax, it does not become a property tax simply because it is proportioned in amount to the value of the property used in connection with the privilege which is taxed. (*State of Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217 [12 Sup. Ct. 121, 35 L. Ed. 994; *Kane* v. *State,* 81 N. J. L. 594 [80 Atl. 453, Ann. Cas. 1912D, 237, L. R. A. 1917B, 553] ; affirmed 242 U. S. 160 [37 Sup. Ct. 30, 61 L. Ed. 222].)

The rule that the mode of ascertainment is not conclusive has been expressly followed in this state. In the case of *Matter of Application of Schuler, supra,* there was involved the interpretation of the 1913 Motor Vehicle Act providing for the charging of a fee for the registration of vehicles, based on horse-power. In holding that the charge there involved was a charge for the privilege of using the highways, this court relied upon and quoted with approval the following language from the leading case of *Kane* v. *State, supra* (p. 290).

"The character of the imposition is not determined by the mode adopted in fixing its amount. (*Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217 [12 Sup. Ct. 121, 163, 35 L. Ed. 994].)" See, also, the advisory opinion of the Supreme Judicial Court of Massachusetts in *Opinion of the Justices,* 250 Mass. 591 [148 N. E. 889].

When the act is read as a whole, we are of the opinion that it must be denominated an excise tax, for revenue purposes, imposed upon the privilege of using the highways for the purpose of operating thereon registered motor vehicles. In the first place, the charge is designated as a privilege tax in the statute itself. Section 2, above quoted, provides that "a license fee is hereby imposed for the privilege of operating in this state any vehicle", etc. Subsequent sections clearly provide that the tax is payable only when the vehicle is operated on the highways of the state. Although the designation made by the legislature is not conclusive on the courts, some weight must be given such designation in determining the nature of the tax. In *San Francisco* v. *Liver-*

*pool etc. Ins. Co.*, 74 Cal. 113 [15 Pac. 380, 5 Am. St. Rep. 425], this court, in discussing the character of a tax, had recourse to this factor. In the *Opinion of the Justices, supra,* the Massachusetts court, in advising the legislature of that state as to the nature of a proposed taxing statute on motor vehicles, based on value, identical in many respects with the one here involved, stated (p. 891) :

"Avowedly an excise tax is established. The declaration to that effect is explicit. Such statutory statement is to be accepted as true unless incompatible with the meaning and effect of the act as a whole."

In *Storaasli* v. *State of Minnesota*, 283 U. S. 57 [51 Sup. Ct. 354, 75 L. Ed. 839], the United States Supreme Court, in interpreting a statute almose identical with the one here involved, emphasized the fact that the legislature had denominated the charge a privilege tax.

In addition to the characterization of the charge in the statute as a privilege tax, an examination of the terms of the act plainly indicates that the charge is an excise for the privilege of using the highways, and not a tax on motor vehicles as personal property. By sections 3 and 6, above summarized, the charge becomes due and payable only when the vehicle is operated on the highways of the state. Any vehicle used exclusively on private property, or that is kept in storage, is not subject to the charge. In such event, the motor vehicle is made subject to local *ad valorem* property taxes. In other words, it is only when the vehicle is used on the highways that the tax becomes payable. Under section 4, it is provided that when a car is first registered during the year, the tax is reduced one-twelfth for each month that has elapsed from the first of the year. The obvious purpose of this provision is that the tax is proportioned according to the extent of the privilege enjoyed. This feature is seldom, if ever, found in a property tax.

By the weight of authority in other jurisdictions, such a tax has been held to be a privilege tax. The leading case is *Storaasli* v. *State of Minnesota, supra,* which involved, as already stated, the interpretation of a Minnesota statute almost identical with the one here under review. The Minnesota tax was measured by the cost of the car, less depreciation, and was made in lieu of all other taxes thereon, except one

specified municipal wheelage tax. It was imposed only on vehicles "using the public streets or highways". The petitioner was a resident of a military reservation under the control of the United States government. His car was registered and licensed under federal law and carried a federal license plate. He contended that the statute levied a property tax, in which event, of course, the property could not be taxed by the state. The state court had held (*State* v. *Storaasli*, 180 Minn. 241 [230 N. W. 572]) that the tax was both a property and a privilege tax and that the character as a privilege tax extended to the whole tax and that, therefore, it must be paid by petitioner. The United States Supreme Court held it would decide for itself the nature of the tax. It then held (p. 62) that:

" . . . We think it plain that the levy is an excise for the privilege of using the highways.

"It is denominated a privilege tax. The car cannot use the highways unless it is paid. The statute contains the usual provisions for registration, issuance and display of number plates, etc. Residents of other states who desire to use the highways for more than the period specified in certain sections extending the privilege, must register their vehicles and pay the same tax as residents of Minnesota. The claim that the state is attempting to tax appellant's property situate without its jurisdiction cannot be sustained."

The same result was reached by the Supreme Judicial Court of Massachusetts in its advisory opinion in 148 N. E. 889 above referred to, involving the interpretation of a proposed statute on motor vehicles, based on the value thereof. The court held that such a tax was nothing more than a toll for the privilege of operating motor vehicles on the highways and was, therefore, a privilege tax. (See, also, *Matter of Application of Schuler, supra; Whaley* v. *Northern Road Imp. Dist.*, 152 Ark. 573 [240 S. W. 1, 24 A. L. R. 934]; *Smith* v. *Commonwealth*, 175 Ky. 286 [194 S. W. 367]; *Jasnowski* v. *Board of Assessors of City of Detroit*, 191 Mich. 287 [157 N. W. 891]; *State* v. *Becker*, 288 Mo. 607 [233 S. W. 54]; *Northwest Auto Co.* v. *Hurlburt*, 104 Or. 398 [207 Pac. 161]; *Ex parte Hoffert*, 34 S. D. 271 [148 N. W. 20, 52 L. R. A. (N. S.) 949].)

For the foregoing reasons, we hold that the charge here involved is an excise tax, for revenue purposes, imposed upon the privilege of operating motor vehicles on the highways of this state and that, therefore, veterans are not entitled to the exemption provided for by section 1¼ of article XIII of the Constitution, that section, by express language, exempting only persons therein mentioned from property taxes.

This disposes of the main contention raised by petitioner. He and *amici curiae* do urge that under section 14 of article XIII of the Constitution, as amended in 1933, the legislature is empowered only to levy property taxes and is not authorized by that section, or any other section, to levy a privilege tax for revenue purposes. This contention is without merit. Assuming, without deciding, that section 14 of article XIII expressly confers power upon the state to levy property taxes only, we find nothing in that section, or in any other section of the state or federal Constitutions, expressly or by implication, denying to the legislature the power to levy a privilege tax for revenue purposes. It is elementary that the legislature is vested with all governmental powers in matters of regulation and revenue not delegated to the federal government or denied to the state legislature by our own or the federal Constitution. (5 Cal. Jur., p. 666, sec. 87.)

It is also urged that the legislature, under section 14, article XIII, has the power to exempt personal property from taxation only when the legislature undertakes to levy a tax on personal property. The language of the section, so far as pertinent here, is as follows:

''The Legislature shall have the power to provide for the assessment, levy and collection of taxes upon all forms of tangible personal property, all notes, debentures, shares of capital stock, bonds, solvent credits, deeds of trust, mortgages, and any legal or equitable interest therein, not exempt from taxation under the provisions of this Constitution, in such manner, and at such rates, as may be provided by law, and in pursuance of the exercise of such power the Legislature, two-thirds of all of the members elected to each of the two houses voting in favor thereof, may classify any and all kinds of personal property for the purposes of assessment and taxation in a manner and at a rate or rates in proportion to value different from any other property in this State subject to taxation and may exempt entirely from

taxation any or all forms, types or classes of personal property.''

It is contended that the phrase ''and in the pursuance of the exercise of such power'' (the power to levy a tax on personal property) qualifies and limits the phrase ''may exempt entirely from taxation any or all forms, types or classes of personal property'', and that since the present tax is not a property tax, no authority exists to exempt motor vehicles as personal property from local taxation. We do not find it proper to decide that point. If the exemption from local taxation found in section 5 is invalid, as beyond the legislative power, this would not render the act unconstitutional; but, under the saving clause in section 9, would simply invalidate that portion of section 5, and the rest of the statute would stand. Such an important question from the standpoint of local taxing authorities and all motor vehicle owners should not be decided in this proceeding, where it is not involved.

■ It is also urged that the act is unconstitutional for the reason that, when read with the provisions of the Vehicle Code, *supra*, double taxation is imposed by the same taxing agency on the same privilege. It is contended that this violates the Constitution, although no provision of either the federal or state Constitution is specifically referred to. This argument is based on the fact that the Vehicle Code, *supra*, section 370, imposes upon all motor vehicle owners as defined in the act, an annual fee of $3. There is no merit in this contention. The mere fact that the state has imposed one excise under one act does not prevent the state from imposing another excise upon the same privilege for the same period. Article XIII, section 1, of the state Constitution, has no application, because that section applies only to property taxes. ■ In the second place, the Vehicle Code was passed by the same session of the legislature that passed the License Fee Act. The latter constantly refers to and incorporates some of the provisions of the former. The two statutes are *in pari materia,* and, under accepted principles of law, should be read together. By so construing the two statutes, there is but one excise tax levied by the state upon the privilege of operating motor vehicles on the highways of this state. Part of this tax (that contained in the Vehicle Code) is a flat charge, while the other part (contained in the

License Fee Act) is based on value. The policy of thus using a double method of assessment is a matter well within the legislative discretion.

Amici curiae have also raised other questions of interpretation and several other constitutional points, many of which are not now properly before us. The city attorney of Pasadena, at great length, urges that the act is unconstitutional in that by section 9b thereof it purports to appropriate a portion of the funds collected to cities for what counsel term "municipal" purposes, in violation of article XI, section 12, of the Constitution, as amended in 1933, and cites such cases as *Ex parte Jackson*, 143 Cal. 564 [77 Pac. 457], *People* v. *Martin*, 60 Cal. 153; *San Francisco* v. *Liverpool, etc. Ins. Co.*, 74 Cal. 113 [15 Pac. 380, 5 Am. St. Rep. 425], and others. This point cannot be determined in this proceeding for the obvious reason that even if section 9b of the act did violate the constitutional provision referred to, a point we expressly refrain from deciding, such invalidity would not affect the other provisions of the act. This was precisely the ruling in *Matter of Application of Schuler, supra*, where exactly the same problem was presented. The other contentions made do not warrant further discussion.

The application for the writ is denied.