[Civ. No. 19455. Fourth Dist., Div. Two. Mar. 7, 1978.]

CITY OF HUNTINGTON BEACH, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ORIN G. BERGE, JR., et al., Real Parties in Interest.

**COUNSEL**

Don P. Bonfa, City Attorney, and Mark Travis, Deputy City Attorney, for Petitioner.

Burt Pines, City Attorney (Los Angeles), Thomas C. Bonaventura, Assistant City Attorney, Ronald Tuller, Deputy City Attorney, Robert J. Wheeler, City Attorney (Mountain View), Ronald J. Cote, Assistant City Attorney, Maurice K. Hamilton, City Attorney (San Mateo), David E. Schricker, City Attorney (Redwood City), and Richard K. Karren, Acting City Attorney (San Jose), as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Christian R. Van Deusen and Herbert Hafif for Real Parties in Interest.

## OPINION

**TAMURA, J.**—The central issue presented by this original proceeding is whether a real property transfer tax imposed by a city is an excise tax or a real property tax.

In a bifurcated trial of a taxpayers' class action to recover real property transfer taxes imposed and collected by the City of Huntington Beach, the trial court determined the liability issue in favor of real parties in interest (hereafter plaintiffs) and entered findings of fact and conclusions of law in accordance with that determination. The matter is before us on an original proceeding in mandamus or prohibition initiated by the city to compel the trial court to set aside its findings and conclusions and to enjoin it from taking any further action in the case other than to enter judgment for the city. We issued an alternative writ and order to show cause.

The pertinent facts are not in dispute:

The City of Huntington Beach is a charter city. In 1967, it adopted an ordinance providing for a "real property transfer tax" in conformity with the provisions of the Documentary Transfer Tax Act (Rev. & Tax. Code, § 11901 et seq.).[1] The ordinance imposed on "each deed, instrument or writing" by which real property in the City of Huntington Beach was transferred or conveyed "when the consideration or value of the interest or property conveyed (exclusive of the value of any lien or encumbrances remaining thereon at the time of sale) exceeds one hundred dollars ($100)" a tax at the rate of 27½ cents for each $500 or fractional part thereof.

On July 1, 1974, the city adopted Ordinance No. 1925 which repealed the 1967 ordinance and adopted a new real property transfer tax. Unlike the earlier ordinance, the new ordinance was not in conformity with the specifications of the Documentary Transfer Tax Act. Subject to certain exceptions, Ordinance No. 1925 imposed "on all transfers by deeds, instruments, writings" of real property in the city a tax at the rate of

---

[1]Unless otherwise indicated, all section references in this opinion will be to the Revenue and Taxation Code.

Although petitioner alleges 1969 as the year of the ordinance's adoption, the copy of the ordinance attached to the petition shows 1967 as the year of adoption by the city council.

one-half of 1 percent "of the value of consideration."[2] The tax was made a joint and several obligation of the transferor and transferee; it was due at the time the deed or instrument of transfer was delivered; and it became delinquent if unpaid at the time the instrument was recorded. The amount of any tax, penalty or interest was declared to be a debt to the city recoverable by an action against the person or persons owing the tax.

In May 1975, the city electorate voted to adopt a charter amendment which forbade the city council from imposing a real property transfer tax unless authorized by a majority of the electors and rendered any transfer tax ordinance theretofore adopted by the city council of no further force or effect.

In September 1975, certain city taxpayers, "on behalf of themselves and all others similarly situated," filed claims with the city for refund of all taxes collected pursuant to Ordinance No. 1925 and later filed the instant class action for recovery of all taxes collected by the city under that ordinance.[3] Issues were joined by the city's answer.[4]

---

[2]The ordinance defined "value of consideration" as follows:

"1752. DEFINITIONS. The term 'value of consideration' means the total consideration, valued in money of the United States, paid or delivered, or contracted to be paid or delivered in return for the transfer of real property, including the amount of any indebtedness existing immediately prior to the transfer which is secured by a lien, deed of trust or other encumbrance on the property conveyed and which continues to be secured by such lien, deed of trust or encumbrance after said transfer, and also including the amount of any indebtedness which is secured by a lien, deed of trust or encumbrance given or placed upon the property in connection with the transfer to secure the payment of the purchase price or any part thereof which remains unpaid at the time of transfer. 'Value of the consideration' also includes the amount of any special assessment levied or imposed upon the property by a public body, district or agency, where said special assessment is a lien or encumbrance on the property and the purchaser or transferee agrees to pay such special assessment or takes the property subject to the lien of such special assessment. The value of any lien or encumbrance of a type other than those which are hereinabove specifically included, existing immediately prior to the transfer and remaining after said transfer, shall not be included in determining the value of the consideration. If the 'value of the consideration' cannot be definitely determined, or is left open to be fixed by future contingencies, 'value of the consideration' shall be deemed to mean the fair market value of the property at the time of transfer, after deducting the amount of any lien or encumbrance, if any, of a type which would be excluded in determining the 'value of the consideration' pursuant to the above provisions of this section.

"As used in this article, the terms 'real property' and 'realty' shall be deemed to mean real property as defined by and under the laws of the State of California."

[3]The complaint alleged the city had collected $900,000 under Ordinance No. 1925.

[4]The city also demurred to the complaint, but the record fails to show its disposition. Each party made a motion for summary judgment, but the motions were denied.

In a bifurcated trial, the issue of liability was tried first. The case was heard on the pleadings, facts judicially noticed by the court, and written and oral arguments of counsel. At the conclusion of the trial, the court rendered its intended decision in which it held the transfer tax was a tax on real property. Taking judicial notice of the fact that real property taxes levied by the city during the years in question were at the maximum rate permitted by the city charter ($1 for each $100 of assessed valuation), the court concluded that the imposition and collection of the transfer taxes resulted in a violation of the charter limitation on real property taxes.

The court made findings of fact and conclusions of law in accordance with its intended decision. In its conclusions, the court determined: Because of the coercive nature of Ordinance No. 1925, the taxes were deemed paid under protest as a matter of law; the city waived any deficiencies in the claims for refund or any objections on the ground of their untimeliness; the taxes constituted a tax on real property and their imposition and collection were in violation of the charter limitation on real property taxes; the taxes illegally collected must be returned to the members of the class with interest from the date the claims were filed. The court expressly rejected plaintiffs' attack upon the transfer tax on the ground the Documentary Transfer Tax Act preempted the city from levying a transfer tax that was not in conformity with that act.

The city's petition and supporting memorandum challenge the trial court's decision on several fronts, but its main attack is on the determination that the transfer tax was a tax on real property.[5] Plaintiffs have filed a demurrer to the petition on the ground the extraordinary writ procedure to review the trial court's action is inappropriate because the city has an adequate remedy by way of an appeal from a judgment after trial of the damage issue. On the merits, plaintiffs urge the trial court properly determined the nature of the tax.

For reasons expressed below, we have concluded that mandate or prohibition is an appropriate remedy to review the trial court's resolution

---

. [5]City also contends the court erred in concluding: (1) That the tax was of such a coercive nature that payment should, as a matter of law, be deemed to have been made under protest, and (2) that the city waived deficiencies in the claims for refund and any objections on the ground of their untimeliness. Since we have concluded that the trial court erred in deciding that the tax was a real property tax and since resolution of that issue in favor of the city is dispositive of this appeal, we need not consider the city's remaining contentions.

of the liability issue. On the merits, we conclude the court below erred in holding the transfer tax to be a real property tax.

I

We first consider the propriety of the extraordinary writ to review the trial court's decision on the liability issue.

■ By issuing an alternative writ, we necessarily determined that the city had no other adequate remedy and that this is a proper case for the exercise of our original jurisdiction through the prerogative writ. (*People ex rel. Younger* v. *County of El Dorado,* 5 Cal.3d 480, 492 [96 Cal.Rptr. 553, 487 P.2d 1193]; *San Francisco Unified School Dist.* v. *Johnson,* 3 Cal.3d 937, 945 [92 Cal.Rptr. 309, 479 P.2d 669]; *County of Sacramento* v. *Hickman,* 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593].)

■ Our implied determination is based on the principle that while mandate will not lie to control the discretion of a court or to compel it to exercise it in a particular manner, in those instances where under the facts it can be legally exercised in but one way, the writ will lie where there is no other adequate remedy. (*Mannheim* v. *Superior Court,* 3 Cal.3d 678, 685 [91 Cal.Rptr. 585, 478 P.2d 17].) **(3)** Here, the dispositive issue at the liability phase of the trial was whether the transfer tax was a tax on real property, but the trial court's resolution of that issue was nonappealable. Where a plaintiff prevails on the liability issue in a bifurcated trial, it is inappropriate to enter a judgment, and if one is entered, it is nonetheless nonappealable. (*Lauderdale* v. *U & I Equip. Co.,* 271 Cal.App.2d 140, 142-143 [76 Cal.Rptr. 483].) Instead of entering a judgment, the court must, as it did here, make findings of fact and conclusions of law in accordance with rule 232 of the rules for the superior courts. (Cal. Rules of Court, rule 232.5.) Although the city could have awaited trial of the damage issue and appealed from the judgment, in the circumstances here presented, we hold that remedy to be inadequate. ■ Relief by mandamus is appropriate where it will prevent a needless, expensive trial and an ultimate reversal (*Holtz* v. *Superior Court,* 3 Cal.3d 296, 301, fn. 4 [90 Cal.Rptr. 345, 475 P.2d 441]), particularly where the issue presented is purely one of law and it is in the public interest to have a prompt settlement of the question presented (*Brown* v. *Superior Court,* 5 Cal.3d 509, 515 [96 Cal.Rptr. 584, 487 P.2d 1224]. 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 106, pp. 3880-3882). A number of municipalities in the state, including the City of Los Angeles, have charter limitations on the real property tax rate

and also collect real property transfer taxes similar to those which were imposed and collected by the City of Huntington Beach. It is thus in the public interest to resolve the instant controversy as expeditiously as possible.

The demurrer to the petition herein is, therefore, overruled.

## II

On the merits, we hold that the city's transfer tax was a tax on the exercise of the right or privilege of transferring property and not a tax on real property.

Though the precise issue here presented has never been decided by our appellate courts, the principle that a tax on the exercise of one of the incidences of property ownership is not a tax on the property is well established. Thus, the federal estate tax is a tax upon the *event* of transfer and not a direct tax on the property (*U. S.* v. *Manufacturers Nat. Bank,* 363 U.S. 194, 197-199 [4 L.Ed.2d 1158, 1162-1163, 80 S.Ct. 1103, 1106-1107]); the California inheritance tax is a tax on the privilege of succeeding to property and not a tax on the property as such (*Kirkwood* v. *Bank of America,* 43 Cal.2d 333, 338-339 [273 P.2d 532]; *Estate of Webb,* 241 Cal.App.2d 85, 87 [50 Cal.Rptr. 397]); a motor vehicle license fee for the privilege of driving a motor vehicle on the highways is not a property tax (*Ingels* v. *Riley,* 5 Cal.2d 154, 159-160 [53 P.2d 939, 103 A.L.R. 1]); and a use tax on the privilege of use, storage or consumption of property is not a tax on the property (*Douglas Aircraft Co., Inc.,* v. *Johnson,* 13 Cal.2d 545, 551 [90 P.2d 572]). It is equally settled that a privilege tax is not a property tax within the meaning of article XIII, section 1 of the California Constitution. (*Brunton* v. *Superior Court,* 20 Cal.2d 202, 207 [124 P.2d 831].)

Under the principles established by the foregoing authorities, the transfer tax imposed and collected by the City of Huntington Beach was not a property tax. Real property taxes are imposed on the ownership of property as such; they recur annually on a fixed date; and no personal liability arises from their nonpayment, the sole security for the taxes being the property itself. (See *Douglas Aircraft Co., Inc.,* v. *Johnson, supra,* 13 Cal.2d 545, 551.) The absence of those characteristics distinguishes the instant transfer tax from a real property tax. Liability for the tax in question arises only when property is conveyed; the transferor and transferee become jointly and severally

liable for the tax upon delivery of the instrument of transfer; and the tax is a debt collectible by an action against the persons liable. The tax is, therefore, on the exercise of one of the incidences of property ownership and as such is an excise tax. (*Douglas Aircraft Co., Inc.,* v. *Johnson, supra,* 13 Cal.2d 545, 551.) ██ The fact that the tax is based on the "value of the consideration" which in turn may have some relationship to the assessed value of the property does not make the tax a property tax. ██ A privilege tax "does not become a property tax simply because it is proportioned in amount to the value of the property used in connection with the privilege which is taxed." (*Ingels* v. *Riley, supra,* 5 Cal.2d 154, 160.)

██ Plaintiffs rely upon the statement in *Ingels* v. *Riley, supra,* 5 Cal.2d 154, 159, that a "privilege tax . . . is imposed upon the right to exercise a privilege, and its payment is invariably made a condition precedent to the exercise of the privilege involved." It is urged that since the city ordinance did not make *actual payment* of the tax a "condition precedent" for effectuating a transfer of property, the tax cannot be deemed to be on the privilege of making a transfer. The contention is without merit. The quoted expression from *Ingels* has never been given the interpretation sought to be placed upon it by plaintiffs. For example, in *Douglas Aircraft Co., Inc.,* v. *Johnson, supra,* 13 Cal.2d 545, despite the fact that the statute did not make actual payment of the use tax a condition precedent to use, storage or consumption of property (*id.,* at pp. 548-549), the court held the tax met the *Ingels* test for an excise tax (*id.,* at p. 550). Like the use tax, although *actual payment* is not a condition precedent to the transfer, liability for the transfer tax arises upon the exercise of the privilege. The fact that liability is conditioned upon transfer satisfies the "condition precedent" requirement of *Ingels.*

It has been said that "[w]hether an exaction is a property tax or an excise tax . . . should be determined by its operation and practical application, rather than by any particular descriptive language contained in the tax law." (16 McQuillin, Municipal Corporations (3d ed. rev. 1972) Taxation, § 44.190, p. 519, fns. omitted.) To paraphrase the oral argument by one of the amici curiae, the real property transfer tax in question looks like an excise tax; it acts like one; it is one.[6]

---

[6]Needless to say, the wisdom of imposing the tax is not a justiciable issue; that was a matter committed to the legislative discretion of the city council.

We conclude the court erred in holding the transfer tax to be a real property tax. Since the court expressly rejected plaintiffs' other attack on the validity of the tax and plaintiffs do not contend the court erred in so doing, the liability issue was erroneously decided in favor of plaintiffs.[7]

Let a peremptory writ of mandate issue directing the trial court to vacate its findings of fact and conclusions of law and to enter judgment in favor of the city.

Gardner, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied March 29, 1978, and the petition of the real parties in interest for a hearing by the Supreme Court was denied May 4, 1978.

---

[7]The trial court rejected plaintiffs' attack on the validity of the tax on the ground that the Documentary Transfer Tax Act preempted the city from adopting a transfer tax ordinance not in conformity with the state act. We agree with the trial judge's resolution of that issue. (§§ 11911, subd. (c), 11931, subd. (3); see *A.B.C. Distributing Co.* v. *City and County of San Francisco*, 15 Cal.3d 566, 571 [125 Cal.Rptr. 465, 542 P.2d 625]; *Ainsworth* v. *Bryant*, 34 Cal.2d 465, 469 [211 P.2d 564].)