[Civ. No. 26641. Second Dist., Div. Two. July 24, 1963.]

CITRUS BELT SAVINGS AND LOAN ASSOCIATION et al., Plaintiffs and Appellants, v. CALIFORNIA FRANCHISE TAX BOARD, Defendant and Appellant.

Alan D. Pauw and Leo Shapiro for Plaintiffs and Appellants.

McGilvray, Cooper & Brodovsky, Kenneth G. McGilvray; Goodson & Hannan, William E. Hannan and Walter S. Weiss as Amicus Curiae on behalf of Plaintiffs and Appellants.

Stanley Mosk, Attorney General, Dan Kaufmann, Assistant Attorney General, and Neal J. Gobar, Deputy Attorney General, for Defendant and Appellant.

HERNDON, J.—Defendant California Franchise Tax Board appeals from the judgment entered in favor of two savings and loan associations following a nonjury trial of their action for refund of certain of their franchise taxes paid during the income years 1953, 1954 and 1955. Each plaintiff made timely payment of its franchise taxes and filed a claim for refund for each year involved. These claims were denied by the defendant board and such denials were affirmed by the State Board of Equalization on appeal. Plaintiffs then commenced this action in the superior court. The court below held that certain payments made by plaintiffs to the Savings and Loan Commissioner should have been offset against their franchise taxes but that plaintiffs' payments to the City of Riverside under its business license ordinance were not available as offsets. Plaintiffs have appealed from this latter holding.

The narrow issue before the trial court, as framed by the pleadings, pretrial proceedings, and stipulations of the parties, was simply this: "May the payments made by plaintiffs to the Savings and Loan Commissioner pursuant to sections 5300 and 5301 of the Financial Code be 'offset' (i.e. credited) pursuant to Section 23184 of the Revenue and Taxation Code against their franchise taxes?"

The question whether or not the payments made to the City of Riverside might be "offset" was not to be determined inasmuch as the defendant board had allowed such offsets. However, after the trial court had answered the only issue

588

presented to it in the affirmative, it undertook to determine this related question in order to compute the exact amount of the refund to which plaintiffs were entitled. In view of our resolution of the primary issue, this latter point becomes moot and will not be considered herein.

■ "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] ■ Moreover, 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' [Citation.] ■ If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. [Citation.] ■ *Such purpose will not be sacrificed to a literal construction of any part of the act.* [Citations.]" (Italics added.) *Select Base Materials, Inc.* v. *Board of Equalization,* 51 Cal.2d 640, 645 [335 P.2d 672].)

Insofar as required for the determination of the issue here presented, the legislative purpose underlying the Bank and Corporations Franchise Tax Law (Rev. & Tax. Code, §§ 23001-23364a) was adequately stated by our Supreme Court in *Crown Finance Corp.* v. *McColgan,* 23 Cal.2d 280 [144 P.2d 331], at page 283:

"The purpose of the act was stated by this court in *H.A.S. Loan Service, Inc.* v. *McColgan,* 21 Cal.2d 518, 520 [133 P.2d 391, 145 A.L.R. 349] : '*Financial corporations are classed with banks both national and state in order that the tax burden they must bear shall not be less than that of banks,* and thus in harmony with the federal statute. . . . The manifest purpose of the Legislature in establishing the classification "financial corporations" was to avoid the tax discrimination denounced by the federal statute.' [Citation.]" (Italics added; see also, *Security-First National Bank* v. *Franchise Tax Board,* 55 Cal.2d 407, 412-415 [11 Cal.Rptr. 289, 359 P.2d 625].)[1]

■ It seems clear that the legislative intent which must be given effect in our interpretation of any part of the act is its purpose to equalize the tax burdens of banks, financial

[1]Respondents, of course, concede that they are "financial corporations," i.e., corporations "dealing with money as distinguished from other commodities" and hence are in competition with the business of national banks. (*Crown Finance Corp.* v. *McColgan,* 23 Cal.2d 280, 284-285 [144 P.2d 331]; see also, *First Fed. S. & L. Assn.* v. *Johnson,* 49 Cal.App.2d 465, 471 [122 P.2d 84].)

corporations and nonfinancial corporations. The principal features of the plan designed by the Legislature to achieve this end are these: Nonfinancial corporations, banks and financial corporations all pay a basic franchise tax that, during the years in issue, was 4 per cent of their net income. (Rev. & Tax. Code, §§ 23151, 23181, 23183 and 23186.) Nonfinancial corporations, however, such as manufacturing and mercantile corporations, also pay personal property taxes. (Rev. & Tax. Code, §§ 201, 103, 106.) Banks are exempted from the payment of personal property taxes. (Cal. Const., art. XIII, § 16; Rev. & Tax. Code, § 23182.)

In order more nearly to equalize the tax burdens of banks and nonfinancial corporations, banks are required to pay an additional amount of taxes under the Bank and Corporation Tax Law at a rate equivalent to the percentage of the total net income of nonfinancial corporations that nonfinancial corporations pay as personal property taxes, but not exceeding 4 per cent. (Rev. & Tax. Code, § 23183; *Security-First National Bank* v. *Franchise Tax Board, supra,* 55 Cal.2d 407, 412.)

Thus, under the Bank and Corporation Franchise Tax Law, banks and financial corporations during the years here involved could be, and were, required to pay a tax measured by up to 8 per cent of their net income, while nonfinancial corporations paid a tax measured by 4 per cent of their net income, plus their personal property taxes. However, although financial corporations pay the same franchise tax rate as banks, they also pay personal property taxes and certain other "taxes and licenses" that banks are not required to pay. (See Rev. & Tax. Code, § 23182.) Therefore, such financial corporations as plaintiffs are permitted to offset against their franchise taxes their personal property tax and such other tax burdens as the Legislature deemed necessary to achieve the desired equality. (Rev. & Tax. Code, § 23184.)

As heretofore indicated, the sole issue here presented is this: Do the assessments made against licensed savings and loan associations (Fin. Code, §§ 5300, 5301) to meet the salaries and expenses incurred in the regulation of such licensed associations (Fin. Code, § 5351) constitute payments comprehended by the term "license" as used in sections 23182 and 23184, Revenue and Taxation Code? It is manifest, of course, that the word "licenses" as used in section 23182 must be substantially equivalent in meaning to the words "license

fees'' found in section 23184, for the inclusion of any payment within the scope of either expression while excluding a similar payment from the other would destroy the very parity sought to be achieved thereby. We have concluded that the determinative question above stated must be answered in the negative.

Both parties have favored this court with engaging and scholarly analyses of the distinctions between the various governmental charges that have been exacted under the denominative terms ''license,'' ''license fee,'' ''license tax,'' etc.
■  Thus, as pointed out in *Ingels* v. *Riley*, 5 Cal.2d 154, 159 [53 P.2d 939, 103 A.L.R. 1], a charge entitled ''license fee'' may be a property tax, an excise or privilege tax, or a regulatory charge imposed under the state's police powers. The inherent distinction between governmental charges designed to produce general revenue and those calculated merely to produce sufficient funds from regulated activities to cover the cost of such regulations was recognized by the framers of the United States Constitution when they provided in article I, section 10, clause 2 thereof as follows:

''No State shall, without the Consent of the Congress, lay any Import or Duties on Imports or Exports, *except what may be absolutely necessary for executing its inspection Laws: . . .* '' (Italics added.)  ■  Clearly, the assessments prescribed by sections 5300 and 5301, Financial Code, are charges of this latter variety, for section 5351 provides: ''The 'Savings and Loan Inspection Fund' shall only be used to defray the salaries and expenses provided for in this division.''

However, determination of the nature of the charge provided for by sections 5300 and 5301 bears only indirectly upon the question whether it should or should not be allowed as an offset under the terms of section 23184, Revenue and Taxation Code. As we have shown, whatever may be the true nature of the charge, it would not necessarily determine whether the Legislature intended to encompass it within the semantically indefinite term ''license'' or ''license fee.''

■  Thus, if the Legislature has indicated its decision to spare banks from such burdens under the provisions of section 23182, then it must be assumed that it likewise intended to produce equality by allowing an equivalent offset for other financial corporations under section 23184. Or, stated in reverse form, if the Legislature has not relieved banks from such

regulatory burdens, it must be assumed that it did not intend to give other financial corporations an economic advantage by using the terms ''license fees'' and ''licenses'' in entirely different senses in two closely correlated sections.

When we examine the statutes, it is at once apparent that assessments are exacted from banks to meet the cost of their regulatory supervision under sections 270-275 of the Financial Code in a fashion substantially identical with that provided for under sections 5300 and 5301 governing savings and loan associations. Clearly, then, the Legislature has concluded that such assessments are not ''licenses'' as that term is used in article XIII, section 16, of the California Constitution or in section 23182 of the Revenue and Taxation Code.

Therefore, absent some very persuasive showing, it would be unreasonable to assume that the Legislature intended to discriminate against banks in favor of other financial corporations by allowing the latter to offset similar charges on the theory that they are the ''license fees'' referred to in section 23184. To do so would clearly defeat the very purpose of this equalizing section and the general legislative plan of which it is a part.

Respondents argue, however, that since they operate under ''licenses'' which must be renewed annually and because such licenses will not be issued until the regulatory assessments are paid (Fin. Code, §§ 5550-5554), they must be deemed to be paying charges different from those paid by the banks which operate under permanent ''certificates of authorization'' that are not subject to annual renewal (Fin. Code, §§ 400-407).

This, however, is a matter of mere form rather than of substance, for the regulatory assessment of banks likewise is an annual charge (§ 270), and, if not paid within 30 days, the bank's certificate of authority is canceled (§ 273). In addition, once authority has been given, by license or otherwise, to carry on a business, the privilege thereby granted is a continuing one and reissuance of a renewal license is a matter of right on the part of one who holds an unsuspended and unrevoked license which is in force at the time of the application. (*Hall* v. *Scudder*, 74 Cal.App.2d 433, 438 [168 P.2d 990]; *Payne* v. *Real Estate Commissioner*, 93 Cal.App. 2d 532, 535 [209 P.2d 419].)

Respondents attempt to strengthen their position by noting that the ''license fees'' paid by personal property

brokers under Financial Code sections 22202 and 22208 and by small loan brokers under sections 24202 and 24208 have been allowed as offsets under section 23184 of the Revenue and Taxation Code. However, a mere reading of the sections relating to such brokers makes it clear that such allowances are not supportive of respondents' contentions. The sums paid under these sections are in fixed amounts ($200 per year since enactment in 1939) and they are not in any manner tied to the costs of regulating such businesses. The fact that they are paid into the state's general fund (Fin. Code, §§ 22212-24212), like most tax revenues, and are subject to reduction if the privilege extended covers less than one-half the calendar year (§§ 22202 and 24202) tends to indicate that these charges were intended to be placed in the category of excise or privilege taxes. Certainly no substantially equivalent charges are paid either by banks or by savings and loan associations, and to allow these extra charges paid by brokers to be offset would tend to promote the desired equality rather than to impair it. Personal property brokers and small loan brokers are *separately* assessed the primary cost of regulating their businesses (Fin. Code, §§ 22607-22608; 24603-24604.) There is nothing in the record to indicate that these charges, which are substantially similar to the assessments against banks and savings and loan associations presently being considered, have ever been allowed as offsets.

It therefore appears to be quite certain that the "license fees" paid by such brokers are the type of charges comprehended by that term as used in sections 23182 and 23184, while assessments for *regulation,* whether of brokers or savings and loan associations, are not. ■ Respondents also note that even if it be conceded that state banks pay to the California Banking Commissioner an assessment similar to that paid by respondents, federally controlled banks and federal savings and loan associations pay no regulatory fees to the State of California. This, of course, is perfectly true, since the state does not regulate such federal institutions. However such institutions do pay substantially identical assessments to their federal regulatory agencies to cover costs of their regulation (cf. 12 U.S.C.A. §§ 481, 482), and these charges may not be offset against California bank and corporation taxes. (§ 23184.) Thus, equality of regulatory fees exists only if plaintiffs, as well as all banks and federal savings and loan

associations, are denied offsets of their contributions to the cost of their regulation.

The judgment is reversed.

Fox, P. J., and Ashburn, J., concurred.

The petition of plaintiffs and appellants for a hearing by the Supreme Court was denied September 18, 1963. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.