[Civ. No. 37407. First Dist., Div. Four. June 30, 1976.]

WILLIAM THOMAS, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES et al.,
Defendants and Respondents.

732

## COUNSEL

Kipperman, Shawn & Keker, Steven M. Kipperman, Lovitt & Hannan, J. Thomas Hannan, and Thomas Elke for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, Philip M. Plant, Deputy Attorney General, Severson, Werson, Berke & Melchior, Robert L. Lofts, Nicholas S. Freud, Jan T. Chilton, Landels, Ripley & Diamond, Frederick M. Pownall, and William R. Pascoe for Defendants and Respondents.

## OPINION

**RATTIGAN, J.**—William Thomas appeals from a judgment denying his petition for a writ of mandate to compel the Department of Motor

Vehicles and its director "to collect the taxes, license and registration fees and penalties due to the State of California . . . on all vehicles owned and operated *by state and national banks* since December 24, 1969."[1]

*Historical Background*

The question presented involves the interplay of pertinent provisions of the Constitutions of the United States and of California, and of legislation enacted by the Congress and by the California Legislature, with respect to this state's imposition of taxes (including vehicle taxes) upon state and national banks. The following historical recital is in order:

Since 1819, the United States Supreme Court has held that the federal Constitution precludes a state from imposing any tax upon a national bank except as authorized by the Congress. (*McCulloch* v. *Maryland* (1819) 17 U.S. (4 Wheat.) 316, 436 [4 L.Ed. 579, 609]; *Agricultural Bank* v. *Tax Comm'n* (1968) 392 U.S. 339, 340-341, 346 [20 L.Ed.2d 1138, 88 S.Ct. 2173].) In the National Bank Act, first enacted in 1864 (Act of June 3, 1864, ch. 106; 13 Stat. 111) the Congress expressed its consent to state taxation of real property owned by national banks and of "shares" held in them by individual citizens. (See Traynor, *National Bank Taxation in California* (1929) 17 Cal.L.Rev. 83, 86.)

The 1864 enactment was amended in 1868 (when it became § 5219 of the Revised Statutes of the United States), in 1923, and in 1926. (Traynor, *op. cit., supra,* 17 Cal.L.Rev. 83 at pp. 86-87.) In the language of section 5219 as amended in 1926 (which thereafter appeared in 12 U.S.C.A. § 548), Congress permitted a state to tax national banks "according to or measured by their net income," and upon other bases, but only "in lieu of" any other taxes imposed upon them except taxes upon their real property. (See 12 U.S.C.A., § 548 [as adopted Mar. 25, 1926], subd. 1(a); Traynor, *op. cit. supra,* at pp. 87-88.)

Pursuant to the 1926 version of Congressional consent, and to a contemporaneous study of the national bank taxation problem and related matters in this state (see Ricks & Polichar, *Taxation of National Banks* (1967) 40 So.Cal.L.Rev. 669, 671-672), the California Constitution

---

[1]With italics added, we here quote the prayer of appellant's petition as filed in the superior court on December 4, 1972. The pertinence of the date mentioned in it ("December 24, 1969"), and of the filing date, will be made to appear.

was amended in 1928 to provide for the imposition of a tax upon all banks located in California "according to or measured by their net income" and, consistent with the "in lieu" limitation expressed by the Congress, "in lieu of all other taxes . . . except taxes upon their real property." (Cal. Const., art. XIII, § 16 [as added Nov. 6, 1928], subd. 1; Traynor & Keesling, *Recent Changes in the Bank and Corporation Franchise Tax Act* (1933) 21 Cal.L.Rev. 543, 543-544.) In the Bank and Corporation Franchise Tax Act, adopted in 1929 pursuant to the new constitutional provision, the Legislature imposed an annual tax upon every state and national bank located in California "according to or measured by its net income" (Stats. 1929, ch. 13, § 1, p. 19) and "in lieu of all other taxes" upon such banks "except taxes upon their real property." (*Id.,* § 3, p. 19.) The substance of this 1929 enactment was later enacted as part of the Bank and Corporation Tax Law. (Rev. & Tax. Code, div. 2, pt. 11 [commencing with § 23001], as added by Stats. 1949, ch. 557, § 1, p. 964. See *id.,* §§ 23181, 23182.)[2]

Prior to 1928 the Legislature had commenced, and it subsequently continued, to impose taxes upon California vehicles in the form of registration and related fees collected from their owners. (See, e.g., Stats. 1905, ch. 612, § 2, p. 816; Stats. 1923, ch. 266, tit. VII, commencing with § 77 [p. 536]; 1935 Veh. Code, div. VI, commencing with § 370 [Stats. 1935, ch. 27, § 370 et seq., p. 147 et seq.]; Stats. 1935, ch. 362, pp. 1312-1315; 1959 [i.e., present] Veh. Code, div. 3, ch. 6, commencing with § 9100; Rev. & Tax. Code, div. 2, pt. 5, commencing with § 10751 [as added by Stats. 1941, ch. 40, § 1, p. 605]. See also *Ingels* v. *Riley* (1936) 5 Cal.2d 154, 157-163 [53 P.2d 939, 103 A.L.R. 1].) The "in lieu" limitation upon bank taxes, as expressed in the 1928 version of article XIII, section 16 (pursuant to the condition of previous Congressional consent to the taxation of national banks, as recited above), operated to exempt all banks, state and national, from such vehicle taxes. (1 Ops.Cal.Atty.Gen. (1943) 87, 88. See 1935 Veh. Code, § 374 [Stats. 1935, ch. 27, § 374, p. 149]; 1959 [present] Veh. Code, § 9103.) However, the prospect of

---

[2]As thus added in 1949, the two last-cited sections provided (italics added):

"23181. An annual tax is hereby imposed upon every bank located within the limits of this State according to or measured by its net income, upon the basis of its net income for the next preceding income year at the rate provided under Section 23186. *With respect to the taxation of national banking associations,* the State adopts the method numbered (4) authorized by the act of March 25, 1926, amending Section 5219 of the Revised Statutes of the United States, Title 12, Section 548, United States Code.

"23182. The tax imposed under Section 23181 upon banks is *in lieu of all other taxes and licenses, State, county and municipal, upon the said banks except taxes upon their real property.*"

Congressional consent to their imposition upon national banks (and upon state banks, in parity with them) was anticipated in a constitutional amendment proposed by the Legislature in 1951 and adopted by the voters in 1952.[3]

The question before us originated when, in Public Law 91-156 as enacted in 1969 (83 Stat. 434) and amended by Public Law 92-213 enacted in 1971 (85 Stat. 775), the Congress ostensibly "permitted" the states to impose upon national banks any taxes, including vehicle taxes as contemplated in section 16.[4] (See subd. (a) of § 16 as quoted in fn. 3, *ante.*) Following the effective date of Public Law 91-156 (Dec. 24,

---

[3] The proposal was Senate Constitutional Amendment 5 (1951), which was adopted by the voters as Proposition No. 15 at the general election conducted on November 4, 1952. (See Stats. 1953, pp. iv, xc.) Section 16 of article XIII was thereby amended to read as follows (italics added):

"Sec. 16. 1. (a) Banks, including national banking associations, located within the limits of this State, shall annually pay to the State a tax, at the rate to be provided by law according to or measured by their net income, *which shall be in lieu of all other taxes* and licenses, state, county and municipal, *upon such banks,* or the shares thereof, except taxes upon their real property *and, when permitted by the Congress of the United States with respect to national banking associations,* motor vehicle and other vehicle registration license fees and any other tax or license fee imposed by the State upon vehicles, motor vehicles or the operation thereof.

"(b) The Legislature may provide by law for any other form of taxation now or hereafter permitted by the Congress of the United States respecting national banking associations; provided, that such form of taxation shall apply to all banks located within the limits of this State.

"2. The Legislature may provide by law for the taxation of corporations, their franchises, or any other franchises, by any method not prohibited by this Constitution or the Constitution or laws of the United States.

"3. *Any tax imposed pursuant to this section must be under an act* passed by not less than two-thirds vote of all the members elected to each of the two houses of the Legislature."

On occasion hereinafter, we refer to this provision as "section 16" only.

[4] Public Law 91-156 took effect on December 24, 1969. (See *id.* See also "Effective Date" annotation, 12 U.S.C.A. § 548 [as amended on the same date].) Its length, and complicated format, preclude us from quoting the full texts of its three sections (§§ 1, 2 and 3) which are pertinent here. Sections 1 and 2 are entitled "Temporary amendment of section 5219, Revised Statutes," and "Permanent amendment of section 5219, Revised Statutes," respectively. The two sections differ in language but, for present purposes, each of them amends section 5219 to permit a state to impose taxes, of the nature involved here, upon a national bank located within its jurisdiction. Section 1 provides that the temporary amendment shall be in effect between the effective date of Public Law 91-156 (Dec. 24, 1969, as stated above) and the effective date of the permanent amendment provided in section 2 (which is fixed in section 2 as "January 1, 1972"). The operation of sections 1 and 2 is affected by section 3, which reads in full as follows (italics added):

"§ 3. Saving provision

"(a) Except as provided in subsection (b) of this section, prior to January 1, 1972, no tax may be imposed on any class of banks by or under authority of any State legislation

1969: see fn. 4, *ante*), and through 1973, the California Legislature enacted no statutes directed to the imposition of vehicle taxes upon state or national banks; in consequence, no such taxes were collected from any bank during the period mentioned.[5]

### The Present Proceeding

In his original petition for writ of mandate filed on December 4, 1972 (see fn. 1, *ante*), appellant alleged that he was a California resident and a vehicle taxpayer; that he brought the action upon behalf of himself and all other vehicle taxpayers similarly situated; and that the respondents named in the petition had "failed and neglected, since December 1969, to perform a mandatory duty imposed upon them by the Constitution

---

in effect prior to the enactment of this Act unless

"(1) the tax was imposed on that class of banks prior to the enactment of this Act, or

"(2) the imposition of the tax is authorized by affirmative action of the State legislature after the enactment of this Act.

"(b) The prohibition of subsection (a) of this section does not apply to

". . . . . . . . . . . . . . . . . .

"(3) *any tax* on tangible personal property (not including cash or currency), or *for any license, registration, transfer, excise or other fee or tax imposed on the ownership, use or transfer of tangible personal property,* imposed by a State which *does not impose a tax,* or an increased rate of tax, *in lieu thereof.*"

Public Law 92-213 amended Public Law 91-156 to make "1972" read "1973" in sections 2 and 3 of the latter. (Pub. L. 92-213, § 4(a), effective Dec. 22, 1971. See "Saving Provision" annot., 12 U.S.C.A. § 548 [as amended Dec. 24, 1969].)

[5]Several bills were introduced to this end throughout the period, but none was enacted. (See Sen. Bill No. 1093 and Assem. Bills Nos. 1938 and 2097 (1970); Sen. Bill No. 240 (1971); Sen. Bills Nos. 877 and 1434 (1972); Assem. Bill No. 153 (1973).) The end was finally achieved by enactment of Assembly Bill No. 931 at the 1975 session (Stats. 1975, ch. 575, p. 1153, effective on and after January 1, 1976, as therein provided. (*Id.,* § 6, p. 1155.) The 1975 enactment amended Revenue and Taxation Code section 10751 to subject "vehicles of banks, including national banking associations" to license fees imposed by the Vehicle Code. (*Id.,* §§ 1 and 2, pp. 1153-1154.) It also amended Revenue and Taxation Code section 21382 to provide that the annual tax imposed upon any bank in section 23181 thereof (see fn. 2, *ante*) was "in lieu of all other taxes" except taxes upon the bank's real property "and motor vehicle and other vehicle registration license [*sic*] fees and any other tax imposed by the state upon vehicles, motor vehicles or the operation thereof." (Stats. 1975, ch. 575, § 3, p. 1154. Compare former § 23182 as quoted in fn. 2, *ante.*)

Meanwhile, in 1974, section 16 of article XIII (of the Constitution) was repealed and language covering its subject matter was adopted as section 27 of article XIII. The new language clearly precludes the interpretation that it is self-executing, or that banks may be taxed without affirmative action by the Legislature. (See Cal. Const., art. XIII, § 27, as adopted Nov. 5, 1974. Compare former § 16 as quoted in fn. 3, *ante.*)

and laws of the State of California; viz., the collection of taxes, license and registration fees upon all vehicles owned and operated by state and national banks in the State of California and the penalties for use of such vehicles on the highways of California without payment of such taxes."[6]

The essentials of appellant's contention based upon the last-quoted allegation, and advanced below and on the appeal, are that the language of section 16 (quoted in fn. 3, *ante*) imposed vehicle taxes upon state and national banks prospectively, as of such time as this was "permitted by the Congress of the United States with respect to national banking associations" as stated in subdivision 1(a) thereof (see *ibid.*); that such taxation of national banks *was* "permitted" by the Congress on and as of December 24, 1969 (the effective date of Public Law 91-156: see fn. 4, *ante*); that section 16 was self-executing; and that it accordingly operated, on that date, to impose then-current taxes upon bank-owned vehicles despite the absence of any legislative enactment to this effect prior to the commencement of the action. (See the text at fn. 5, *ante*.)

The issues joined upon appellant's petition were submitted to the trial court upon arguments and briefs, without testimony to the facts (which have been substantially recited above, and which have been undisputed at all times). In January 1974, the court filed a memorandum ("Notice Of Intended Decision") in which it announced its resolution of the issues, adversely to appellant, upon the sole basis of the "saving provision" in Public Law 91-156.[7] Appellant requested formal findings and conclusions, respondents submitted a proposed draft thereof to the court, appellant filed objections, and respondent banks filed a reply.

Several months later (and one full year after the court had announced its intended decision), appellant moved for leave "to amend . . . [his] . . .

---

[6]The respondents thus charged in the petition, by name, were the Department of Motor Vehicles and its director. They were joined below by more than 100 banks doing business in California, whom the trial court ordered joined as prospective vehicle taxpayers. The department, the director, and the banks are all respondents on the appeal.

[7]We may resort to the memorandum for the purpose of ascertaining the grounds of the court's decision. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 231, pp. 4221-4222.) In pertinent part, it stated: "*As of the date on which this proceeding was filed,* no duty on the part of Respondent, Department of Motor Vehicles, existed to collect licensing and registration fees *because of the saving provision* (Section 3) of Public Law 91-156 (effective December 24, 1969), 83 Stat. 434, as amended by Public Law 92-213, Section 4A (effective December 22, 1971), 85 Stat. 775. Accordingly, the petition for writ of mandate, heretofore submitted, is denied." (Italics added.)

petition filed December 4, 1972 to conform to the proof . . . and/or for leave to file a supplemental or amended petition for a writ of mandate." In a proposed "Supplemental Petition" served and filed with the notice of this motion, it was made clear that appellant desired to place in issue an alleged "mandatory duty," in respondents department and director, to collect ongoing taxes upon bank-owned vehicles *after* the "date on which this proceeding was filed" (see fn. 7, *ante*) and *after* January 1, 1973 (the terminal date of the saving provision as amended: see fn. 4, *ante*).

The court denied appellant's motion and signed and filed the findings and conclusions previously proposed by respondents. It therein (1) reiterated its determination that the petition was to be denied upon the basis of the saving provision alone, and (2) found that the state respondents had not collected vehicle taxes from respondent banks up to and including May 31, 1973, but (3) expressly limited its decision, as portended in its memorandum thereof (see fn. 7, *ante*), to the period of time preceding December 4, 1972.[8] A judgment denying relief, without any express limitation in point of time, was entered accordingly. This appeal followed.

### Discussion and Disposition

Appellant contends that the trial court erred (1) in its interpretation of Public Law 91-156 and (2) in its denial of his motion to place in issue the asserted duty of the state respondents to collect vehicle taxes from

---

[8]The court found and concluded, in pertinent part, as follows: "Findings of Fact . . . . 5. Respondent Department of Motor Vehicles and its Director . . . , have not collected motor vehicle license fees, registration fees, and penalties for nonpayment thereof from any of the bank respondents in the years 1970, 1971, 1972, and as of May 31, 1973 for certain motor vehicles and respondent Department . . . and its Director . . . , in the years 1970, 1971, 1972 and 1973 issued to the aforesaid additional parties license plates for certain motor vehicles operated upon the highways of the State of California. 6. The California Legislature had taken no affirmative legislative action between the date of enactment of P. L. 91-156 (December 24, 1969) *and the time this action was brought* to impose upon banks motor vehicle license and registration fees.

"Conclusions of Law. . . .: 1. States may tax National banks only in ways permitted by Congress. 2. By virtue of the Saving Provision § 3 of P. L. 91-156, States could impose new taxes upon National banks prior to January 1, 1973, only by affirmative legislative action. 3. *As of December 4, 1972, the date on which this proceeding was filed,* the State of California had not taken any affirmative legislative action to impose new taxes on National Banks and no duty on the part of respondent Department of Motor Vehicles existed to collect licensing and registration fees because of the Saving Provision (§ 3) of P. L. 91-156 (effective December 24, 1969), 83 Stat. 434, as amended by Public Law 92-213, § 4 (a) (effective December 22, 1971), 85 Stat. 775." (Italics added.)

California banks after the date upon which he commenced the action. He further contends (3) that this duty existed, upon or after the enactment of Public Law 91-156, because that event triggered the assertedly self-executing feature of section 16 (of art. XIII of the Cal. Const.).

Appellant's first contention may not be sustained. A summary scan of Public Law 91-156 indicates as follows (see fn. 4, *ante*): In varying terms, but between them, sections 1 and 2 grant Congressional authorization, to any state and in pertinent respects, to tax a national bank at all times after the effective date of the original enactment (Dec. 24, 1969). As amended, subdivision (a) of section 3 in effect defers such authorization, until January 1, 1973, except as to two state taxes which it expressly describes in paragraphs (1) and (2). A further exception to this "deferring effect" appears in subdivision (b), which cancels it entirely—after December 24, 1969—as to vehicle taxes (subd. (b), par. (3)) "imposed by a State which does not impose a tax . . . in lieu thereof" on that date.

California *did* impose a tax upon national banks, "in lieu of" vehicle taxes, on December 24, 1969. Section 16 of article XIII of its Constitution was then ambiguous in this respect, but the pertinent provisions of the Revenue and Taxation Code were not: they expressly provided that the annual tax imposed by this state upon "every bank . . . according to or measured by its net income" (*id.,* § 23181) was *"in lieu of all other taxes . . .* upon the said banks except taxes upon their real property." (*Id.,* § 23182 [italics added]. See both sections as quoted in fn. 2, *ante*.)[9] The cancelling effect of subdivision (b) accordingly does not apply to the California vehicle taxes in question, and the deferring effect of subdivision (a) applies to them if they do not fall within either of the two exceptions described in paragraphs (1) and (2) thereof.

They were not within the paragraph (1) exception upon any theory, including the trigger effect which appellant claims for the enactment of Public Law 91-156 upon the assertedly self-executing features of section 16 (of art. XIII) of the California Constitution: even under that

---

[9]The ambiguity in section 16 appears because the "in lieu of" clause thereof ("which shall be in lieu of . . .") may be read as referring to the language which precedes it (relative to the annual "tax" to be paid by "[b]anks . . . according to or measured by their net income"), and not to the language which follows it (relative to vehicle taxes). No such ambiguity appears in the Revenue and Taxation Code sections cited, and the last clause of subdivision (b) (of section 3 of Public Law 91-156) neither draws nor suggests a distinction between an "in lieu thereof" tax "imposed" by a state Constitution and one "imposed" by its statutes.

theory, none of the vehicle taxes was a "tax . . . imposed on . . . banks . . . prior to the enactment . . . ." They were not reached by the paragraph (2) exception in this case, within the time frame structured by the commencement of appellant's action on December 4, 1972, because—in the language of paragraph (2)—their "imposition" upon California banks was not "authorized by affirmative action of the State Legislature after the enactment" of Public Law 91-156 and prior to December 4, 1972. The trial court reached an express conclusion to this effect (see conclusion of law No. 3, quoted in fn. 8, *ante*); for the reasons just stated, we agree with it.

■    Having decided the cause upon the basis of that conclusion alone, and having declined to extend the reach of its decision to any point in time after December 4, 1972, the trial court did not reach appellant's contentions that section 16 (of art. XIII of the Cal. Const., as amended in 1952) was self-executing and that the enactment of Public Law 91-156 triggered it into effect after the date mentioned. Appellant's post-submission motion, for leave to place this subject in issue, was belated by a full year. In connection with leave to file the "supplemental" petition proposed in the motion, he alleged no "*facts* material to the case occurring after the former . . . [petition] . . . ." (Code Civ. Proc., § 464 [italics added].) The denial of his motion was accordingly correct in procedural principle (*Wood* v. *Brown* (1974) 39 Cal.App.3d 232, 240 [114 Cal.Rptr. 63]), and his claim of error in this regard is unfounded.

■    The denial nevertheless had the effect of limiting the decision in point of time, as mentioned above, and of leaving appellant's constitutional contentions unresolved. Its legal result is an interval of approximately two years[10] as to which there remains an open question whether respondents department and director had a "mandatory duty" to collect taxes and fees upon bank-owned vehicles. The practical results may include another taxpayer's suit in quest of an answer. Although the interval is not long, the taxes and fees which are conceivably involved are substantial in amount. We therefore conclude, without imputing any error to the trial court, that the residual question may and should be resolved in this action. Because the facts are undisputed, they appear in

---

[10]The interval commenced on December 4, 1972 (the date which limits the reach of the present judgement, according to the trial court's finding No. 6 and its conclusion of law No. 3 [see fn. 8, *ante*]). It terminated in November 1974, upon the repeal of former section 16 of article XIII of the Constitution and the adoption of new language in section 27 of the same article. (See fn. 5.)

the present record, and the question is one of law alone, we undertake the necessary effort.

Again referring to Public Law 91-156, we have seen that the California vehicle taxes in question are not within either of the exceptions mentioned in paragraphs (1) and (2) of subdivision (a) of section 3, nor are they within the further exception described in subdivision (b). (See fn. 4, *ante.*) These results successively follow: Subdivision (a) had the effect of deferring until January 1, 1973, the congressional authorization for such taxes as otherwise granted in sections 1 or 2. Any triggering effect of such authorization (for which appellant contends upon the premise that former section 16 [of article XIII of the Constitution, prior to the repeal of the section in 1974] was self-executing) could not have occurred until the authorization actually took effect on the date mentioned. Respondents department and director accordingly had no "duty" to collect the taxes, upon any bank-owned vehicle and under any theory, prior to January 1, 1973.

■■■ Whether they had any such "duty" thereafter, and during the post-1972 interval in question (see fn. 10, *ante*), depends upon the validity of appellant's premise that section 16 was self-executing. It did not say that it was. (See its text as quoted in fn. 3, *ante.*) Its paragraph "(3)." clearly imported that it could be executed only by affirmative legislative action. (See *ibid.*) The legislators who initiated such action prior to 1975 (see fn. 8) obviously held the view that the section was not self-executing. The author of the 1975 bill which finally produced such legislative action held this view, as did his colleagues who voted for the measure and the Governor who approved it. (See *ibid.*) The Attorney General has expressed the same view (55 Ops.Cal.Atty.Gen. (1972) 20, 21), which is obviously shared by respondents department and direc- tor. ■■■ The construction of former section 16 by these various officers is entitled to substantial weight in its interpretation by this court. (See, e.g., *Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 692 [97 Cal.Rptr. 1, 488 P.2d 161]; *D'Amico* v. *Board of Medical Examiners* (1970) 6 Cal.App.3d 716, 724 [86 Cal.Rptr. 245]; *Cryor* v. *State Personnel Bd.* (1967) 253 Cal.App.2d 100, 105 [61 Cal.Rptr. 243].) ■■■ Consis- tent with their construction of the section, and with its express language, we conclude that it was not self-executing as appellant contends; and that, in the absence of legislative action requiring the collection of taxes and fees upon bank-owned vehicles at any time between January 1, 1973,

and November 1974, respondents department and director had no duty to collect them at any such time.

■ The effectuation of our conclusions, in this action (relative to the full period of time between Dec. 4, 1972, and Jan. 1, 1976), requires modification of the pertinent findings and conclusions made by the trial court, and of the judgment, to reflect the longer time interval to be reached by them. Respondent banks have suggested that we are without jurisdiction to do this upon the ground that the trial court limited its jurisdiction in point of time (and ours, in succession) when it denied appellant leave to file his proposed supplemental petition. We do not agree with this suggestion: the allegations of the original petition for a writ of mandate, filed on December 4, 1972, vested the trial court with jurisdiction to grant or deny relief as to any period of time after December 24, 1969. The facts being undisputed, we make the indicated modifications accordingly. (See *Boller* v. *Signal Oil & Gas Co.* (1964) 230 Cal.App.2d 648, 656-657 [41 Cal.Rptr. 206].)

The trial court's findings of fact Nos.5 and 6 are modified to read: "5. Respondent Department of Motor Vehicles and its Director have not collected motor vehicle license fees, and penalties for nonpayment thereof, from any of the bank respondents in or for the years 1970 through 1975, inclusive, for certain motor vehicles operated upon the highways of the State of California, and have issued license plates for said vehicles in and for each of said years. 6. The California Legislature took no affirmative action to impose such fees upon banks until 1975, when it did so effective January 1, 1976."

■ The trial court's conclusions of law are modified by adding thereto the following: "4. No such duty existed after December 4, 1972, and until January 1, 1976, because the provisions of former section 16 of article XIII of the California Constitution (as amended Nov. 4, 1952, and repealed Nov. 5, 1974) were, and the provisions of present section 27 of said article (adopted Nov. 5, 1974) are, not self-executing with respect to the imposition of such fees upon banks."

Paragraph "1." of the judgment herein is modified to read: "1. The petition for a writ of a mandate is denied as to any time or period of time prior to December 31, 1975."

As so modified, the judgment is affirmed. No party shall recover costs on appeal.

Caldecott, P. J., and Emerson, J.,* concurred.

A petition for a rehearing was denied July 30, 1976, and appellant's petition for a hearing by the Supreme Court was denied October 6, 1976.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.