[No. A019005. First Dist., Div. Three. Mar. 29, 1985.]

HIBERNIA BANK, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

[No. A019006. First Dist., Div. Three. Mar. 29, 1985.]

ZABLOCKI CORPORATION, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

394

COUNSEL

Francis C. Latcham, Prentiss Willson, Jr., Charles J. Moll III and Morrison & Foerster for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, and Timothy G. Laddish, Deputy Attorney General, for Defendant and Respondent.

OPINION

SCOTT, J.—Appellants Zablocki Corporation (Zablocki) and Hibernia Bank (Hibernia), appeal from judgments entered in favor of respondent State Board of Equalization in appellants' consolidated actions for the refund of taxes paid on gross receipts from sales of personal property by Zablocki and other sellers to Hibernia. We affirm the judgments.

I

Hibernia was and is a banking corporation chartered under state law, and Zablocki is a California corporation engaged in the printing business. Between October 1, 1968, and December 31, 1973, Zablocki sold printed forms and other personal property to Hibernia.

It is the general practice of retailers selling tangible personal property in this state to state separately "sales tax reimbursement" in setting forth the total amounts charged their customers; it is also the general practice of customers to pay "sales tax reimbursement" as part of the total amount paid for goods. The invoices sent by Zablocki to Hibernia were consistent with this general practice: an amount computed according to the "sales tax reimbursement" schedules prepared by respondent was stated separately from the stated sales price of items.

Zablocki timely filed state and local sales and use tax returns during this period, and included therein its gross receipts from its sales to Hibernia, exclusive of any "sales tax reimbursement"; Zablocki paid the total amount of sales taxes due. Zablocki then filed claims with respondent for a refund of those sales taxes, on the ground that its receipts from sales to certain banks were exempt from California sales taxes. Hibernia also filed documents designated as claims for a refund for that period, requesting the refund of "sales tax reimbursements" it had paid to specified retail sellers. No part of the sums claimed by either Zablocki or Hibernia were refunded.

In 1975 and 1979, Zablocki filed actions seeking a refund of those sales taxes; its complaints in those actions stated that it had agreed to remit any refund received to Hibernia. Hibernia also commenced similar actions. The several actions were consolidated for trial, and were submitted to the trial court on stipulated facts. Separate judgments were entered against Zablocki and Hibernia, who both appealed. The two appeals were consolidated by this court for briefing, argument, and decision.

Although at trial appellants sought a refund of taxes paid through December 31, 1973, in this appeal they seek only a refund of taxes paid between October 1, 1968, and December 24, 1969.[1] Their primary contention is that according to former article XIII, section 16 of the California Constitution and sections 23181 and 23182 of the Revenue and Taxation Code, state and national banks must be treated equally for tax purposes, and that because national banks were exempt from California sales taxes during the period at issue, state banks must also be exempt.

Some background information is essential to an understanding of this controversy and of appellants' contentions. Long ago, in *McCulloch* v. *Maryland* (1819) 17 U.S. 316 [4 L.Ed. 479], the United States Supreme Court declared national banks constitutionally immune from state taxation. Since 1864, however, Congress has waived that immunity by statute and has permitted specific types of state taxation, and the Supreme Court has affirmed the principle that states may tax national banks only as permitted by Congress. (See *United States* v. *State Bd. of Equalization* (9th Cir. 1980) 639 F.2d 458, 459.) Prior to December 24, 1969, Congress permitted state taxation of national banks only by one of four specified methods. (*Id.,* at p. 460.) In 1928, California adopted one of those methods, a franchise tax based on net income. (*Security-First Nat. Bk.* v. *Franchise Tax Bd.* (1961) 55 Cal.2d 407, 413-414 [359 P.2d 625].) The tax, which was in lieu of all other taxes except those upon real property, was made applicable to all banks located in the state. (Cal. Const., art. XIII, former § 16[2]; Stats. 1929, ch. 13, §§ 1-3, p. 19 (now Rev. & Tax. Code, §§ 23181, 23182).) "The end result was that competing state and national institutions received the same benefits and paid taxes at the same rate." (*Western States Bankcard Assn.* v. *City and County of San Francisco* (1977) 19 Cal.3d 208, 216 [137 Cal.Rptr. 183, 561 P.2d 273].)

---

[1]In their opening brief, appellants state that the issue is whether they are entitled to refunds for sales made during the period *April* 1, 1968, through December 24, 1969. As the stipulated facts specify *October* 1, 1968, as the date upon which Zablocki's sales to Hibernia commenced, we will assume that the reference to the April date is a misstatement.

[2]Former section 16 was repealed on November 5, 1974, and replaced by article XIII, section 27.

In 1938, in *Western L. Co.* v. *State Bd. of Equalization* (1938) 11 Cal.2d 156 [78 P.2d 731, 117 A.L.R. 838], the California Supreme Court considered and rejected a contention that taxes imposed pursuant to the state Retail Sales Tax Act on the gross receipts of sales made by a retailer to a national bank were an impermissible tax on that bank. The court held that the tax was validly imposed, as it was a tax on the retailer, not on the consumer bank. The court relied on a consistent line of California authority holding that the state's sales tax is an excise tax for the privilege of conducting a retail business measured by the gross receipts from sales, and not a tax on the purchaser of goods. (*Id.*, at pp. 162-164, 167.)

Subsequently, however, in a one paragraph per curiam opinion, the United States Supreme Court held that the incidence of California's state and local sales taxes fell upon a national bank as purchaser and not upon the vendors, notwithstanding a California court's contrary conclusion, and that the national bank was therefore exempt from those sales taxes under the federal statutes then in effect. (*Diamond National* v. *State Equalization Bd.* (1976) 425 U.S. 268 [47 L.Ed.2d 780, 96 S.Ct. 1530].)

Effective December 24, 1969, Congress amended federal law to lessen the restrictions on state taxation of national banks, and the effect of those amendments is not at issue in this case. (See *United States* v. *State Bd. of Equalization, supra,* 639 F.2d at pp. 461-466.) It is undisputed, however, that in light of *Diamond National,* California's sales tax could not be imposed on sales of tangible personal property to national banks prior to December 24, 1969. (See *Diamond Nat. Corp.* v. *State Bd. of Equalization* (1976) 60 Cal.App.3d 283, 284-285, fn. 1 [131 Cal.Rptr. 528].)

II

With that background in mind, we turn to appellants' contentions. First, appellants contend that article XIII, former section 16 of the California Constitution required that state and national banks be taxed equally, and that if national banks were exempt from the state's sales tax during the period at issue, state banks must be exempt as well. Respondent contends that during the period in issue, the California Legislature intended the California sales tax to apply to retail sales to state banks, that the Legislature accomplished that purpose by having the incidence of the sales tax apply to retailers who made the sales to banks, and that the California Constitution does not prohibit such application.

When the Legislature enacted the California Retail Sales Tax Act, it intended that the incidence of the tax be on the retailer, not upon the consumer. (*Western L. Co.* v. *State Bd. of Equalization, supra,* 11 Cal.2d at p. 162

and cases cited therein.) Although in *Diamond National* v. *State Equalization Bd., supra,* 425 U.S. 268, the United States Supreme Court declared that the incidence of the California sales tax fell on a national bank as purchaser, rather than on the vendor, California cases decided after *Diamond National* have consistently held that for *state* purposes, the legal incidence of the California sales tax continues to be on the retailer. (*Xerox Corp.* v. *County of Orange* (1977) 66 Cal.App.3d 746, 757 [136 Cal.Rptr. 583]; *Occidental Life Ins. Co.* v. *State Bd. of Equalization* (1982) 135 Cal.App.3d 845, 847-851 [185 Cal.Rptr. 779]; see also *Western States Bankcard Assn.* v. *City and County of San Francisco, supra,* 19 Cal.3d at pp. 217-219; *United States* v. *State Bd. of Equalization, supra,* 639 F.2d at p. 465, fn. 4.)

The Legislature reiterated its intent that the incidence of the California sales tax is on the retailer when it amended provisions of the sales tax act in 1978. Section 19 of that legislation provides: "The Legislature in adopting the Sales Tax Act in 1933 intended that the incidence of the sales tax be on the retailer. . . . Notwithstanding such legislative intent and decisions of California courts holding that the incidence of the California sales tax is upon the retailer and not upon the purchaser, the United States Supreme Court in *Diamond National Corp.* v. *State Board of Equalization,* 47 L. Ed. 2d 780 . . . held that for federal purposes the incidence of the California sales tax is on the purchaser. This act provides for changes in the California Sales and Use Tax Law to make it clear that for both federal and state tax purposes the incidence of the California sales tax is upon the retailer for the privilege of selling tangible personal property at retail and is not upon the purchaser. . . ." (Stats. 1978, ch. 1211, § 19, pp. 3925-3926.)

Appellants dismiss the state's sales tax act as irrelevant. ■ However, the Legislature's power in the field of taxation is limited only by constitutional restrictions. "In other words, the Legislature's authority to impose taxes and regulate the collection thereof exists unless it has been *expressly* eliminated by the [California] Constitution. [Citation.]" (*Armstrong* v. *County of San Mateo* (1983) 146 Cal.App.3d 597, 624 [194 Cal.Rptr. 294].) Therefore, appellants can prevail only if the California Constitution prohibits the application of the state's sales tax to retail sales to state banks.

Section 16, as added to the Constitution in 1928, provided in pertinent part: "1. (a) Banks, including national banking associations, located within the limits of this State, shall annually pay to the State a tax according to or measured by their net income, which shall be in lieu of all other taxes and licenses, state, county and municipal, upon such banks, . . . except taxes upon their real property. . . . [¶] (b) The Legislature . . . in lieu of such tax, may provide by law for any other form of taxation now or hereafter

permitted by the Congress of the United States respecting national banking associations; provided, that such form of taxation shall apply to all banks located within the limits of this State."[3]

■ California adopted the in lieu tax on net income and made it applicable to all banks located within the state because tax-rate parity between national and state banking institutions was a prerequisite for any tax upon national banks. (*Western States Bankcard Assn.* v. *City and County of San Francisco, supra,* 19 Cal.3d at pp. 215-216; see also *Security-First Nat. Bk.* v. *Franchise Tax Bd., supra,* 55 Cal.2d at p. 414 [purpose of limitation on rate of tax which may be imposed on national banks intended to prohibit discrimination in practical operation against national banks as a class].)

Appellants contend that in addition to this purpose, section 16 was also adopted to insure that state banks were not taxed more heavily than national banks. Respondent, on the other hand, argues that section 16 does not require that state banks may never bear a heavier tax burden than national banks.

■ Courts must interpret a constitutional amendment to give effect to the intent of the voters adopting it. (*In re Quinn* (1973) 35 Cal.App.3d 473, 483 [110 Cal.Rptr. 881].) In determining that intent, courts first examine the words of the provision itself. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155].) Where a provision is clear and unambiguous, there is no need for construction. (*Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855, 866 [167 Cal.Rptr. 820, 616 P.2d 802].) Where constitutional language is shown to have a latent ambiguity, however, customary rules of construction must be applied. (*Stanton* v. *Panish* (1980) 28 Cal.3d 107, 115 [167 Cal.Rptr. 584, 615 P.2d 1372].) Generally, the Legislature is supreme in the area of taxation; therefore, constitutional restrictions on that legislative power must be strictly construed against the limitation. (*First City Bank* v. *Franchise Tax Bd.* (1977) 70 Cal.App.3d 444, 455 [139 Cal.Rptr. 12].) Ballot arguments presented to the voters may be helpful in determining the probable meaning of uncertain language, although such election materials are not conclusive. (*Ibid.; Carman* v. *Alvord* (1982) 31 Cal.3d 318, 330 [182 Cal.Rptr. 506, 644 P.2d 192].)

■ First, it is clear that the plain language of subdivision 1(a) of section 16 is not helpful to appellants. That section provides that the tax on net

---

[3]Section 16 was amended in 1933 and again in 1952; the latter amendment authorized the imposition of motor vehicle license fees and taxes "when permitted by the Congress . . . with respect to national banking associations." (See *Thomas* v. *Department of Motor Vehicles* (1976) 59 Cal.App.3d 731, 734-737 [131 Cal.Rptr. 164].)

income was imposed "in lieu of" other taxes on banks. However, in light of the California rule as to the incidence of the sales tax, it is clear that the tax on net income was not imposed on banks in lieu of the sales tax.

As for subdivision 1(b), both parties look to the 1928 ballot argument in favor of section 16 to support their positions. That argument stated that section 16 was an emergency measure, submitted to meet a crisis resulting from United States Supreme Court decisions which had practically nullified the state's method of taxing banks and relieved them from all taxes until the state's method was changed. The argument explained that the proposed new method of taxing banks met "the requirement of federal law that national banks be taxed according to net income and at a rate no higher than is applied to other corporations. It is made sufficiently flexible to allow changes of rates or method whenever permitted by amendments in federal laws." (Ballot Pamp., Proposed Amends. to Cal. Const. and Proposed Statutes with arguments to voters, General Elec. (Nov. 6, 1928) p. 8.) The ballot argument is inconclusive. It does specifically mention the federal limitation on taxation of national banks, but it makes no other distinction between state and federal banks, and repeatedly refers to "bank taxes" generally.

While neither party cites a case in which this issue has been squarely raised, section 16 has been generally discussed as if it set forth the exclusive method of taxing all banks in the state. (See, e.g., *First City Bank* v. *Franchise Tax Bd., supra,* 70 Cal.App.3d at pp. 451-455; *Citrus Belt S. & L. Assn.* v. *California Franchise Tax Bd.* (1963) 218 Cal.App.2d 584, 588-589 [32 Cal.Rptr. 579].) Nevertheless, it is undisputed that absent a federal issue, state courts have final authority to interpret state laws, and that under California law, the legal incidence and the economic burden of sales taxes are two separate and distinct concepts. (*Occidental Life Ins. Co.* v. *State Bd. of Equalization, supra,* 135 Cal.App.3d at p. 850.) We find nothing in section 16 which expressly prohibited the imposition of the legal incidence of a tax on a nonbank entity, even though the economic burden of that tax fell on state banks, unless national banks were similarly burdened, either directly or indirectly. Accordingly, the Constitution does not entitle appellants to a refund.

### III

Appellants also contend that they are entitled to a refund of sales taxes imposed on sales to state banks during the period at issue because the equal protection clauses of the United States and California Constitutions require that state and national banks be treated equally.

■ First, respondent contends that because none of the documents filed as claims for refunds for the period before December 24, 1969, raised any equal protection issue, appellants are barred from seeking relief before the trial court or in this court on that ground. It is true that a refund claim must state the grounds upon which a taxpayer relies, and a refund action is confined to the grounds set forth in the claim. (Rev. & Tax. Code, §§ 6904, 6933; *King* v. *State Bd. of Equalization* (1972) 22 Cal.App.3d 1006, 1015 [99 Cal.Rptr. 802].) However, as appellants point out, their claims were filed before the United States Supreme Court's decision in *Diamond National*, which gave rise to their equal protection claims. Accordingly, we conclude that appellants were not precluded from raising the issue at trial.

However, we find appellants' equal protection arguments unpersuasive. ■ "A statute violates the equal protection clause if it selects one particular class of persons for a species of taxation and no rational basis supports such classification. [Citation.]" (*John Tennant Memorial Homes, Inc.* v. *City of Pacific Grove* (1972) 27 Cal.App.3d 372, 379 [103 Cal.Rptr. 215].) In areas of economic regulation, legislation is presumed to be constitutional, and distinctions drawn by a challenged statute must merely bear some rational relationship to a conceivable legitimate state purpose. (*Serrano* v. *Priest* (1976) 18 Cal.3d 728, 761 [135 Cal.Rptr. 345, 557 P.2d 929].) The United States Supreme Court has rejected the argument that because a state can tax a federal instrumentality only when permitted by Congress, it violates the equal protection clause by taxing local competitors of such instrumentalities in some other fashion. (*Union Bank & Trust Co.* v. *Phelps* (1933) 288 U.S. 181, 187 [77 L.Ed. 687, 690, 53 S.Ct. 321, 83 A.L.R. 1438].) To hold otherwise, the court explained, ". . . would subject the taxing power of the State to the will of Congress far beyond what is necessary for the protection of federal agencies. The constitutional inhibition against taxing these agencies does not abridge the taxing power of the several States in respect of other property." (*Ibid.*)

■ Here California consistently applied its sales tax to all retailers, including those who sold to banks, under the rule that the incidence of the tax was on the retailers. When the United States Supreme Court's decision in *Diamond National* effectively barred this state from taxing sales to national banks for a limited period, it was unquestionably reasonable for the state to continue application of its established method of taxing retailers selling to all other consumers, including state banks.

Appellants' attempt to invoke the state's equal protection clause is unpersuasive. ■ Our state equal protection clause does possess an independent vitality which, in a given case, may demand an analysis different from that applicable under the federal standard. (*Serrano* v. *Priest, supra,* 18

Cal.3d at p. 764.) However, appellants have failed completely to establish that this is such a case. (Cf. *ibid.*)

Finally, in light of our conclusion, we need not consider appellants' contention that Hibernia had standing to sue for a refund of the sales tax.

Judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied April 25, 1985, and appellants' petition for review by the Supreme Court was denied June 19, 1985.