Filed 12/9/24  Souverneva v. Superior Court CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

|  |  |
|---|---|
| ALEXANDREA ANDREEVNA SOUVERNEVA, | C100950 |
| Petitioner, | |
| v. | (Super. Ct. Nos. 21CRF6635, 21CRM6640) |
| THE SUPERIOR COURT OF SHASTA COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

Charged with six counts of arson of forest land, Alexandrea Andreevna Souverneva requested pretrial mental health diversion pursuant to Penal Code section 1001.36.[1]  The trial court denied the request, finding an unreasonable risk of danger that Souverneva would set a fire, causing damage to property and loss of life, if she was treated in the community.

---

[1] Undesignated statutory references are to the Penal Code.

1

Souverneva filed the instant petition for writ of mandate challenging the trial court's order. She contends the finding of an unreasonable risk of danger to the public is not supported by substantial evidence. The People counter that writ review is unavailable because Souverneva has an adequate remedy by appeal.

We will address the merits of Souverneva's writ challenge and conclude that substantial evidence supports the trial court's denial of mental health diversion. Accordingly, we will deny Souverneva's petition for writ of mandate.

BACKGROUND

We draw the following facts from the preliminary hearing testimony. On September 22, 2021, CAL FIRE Fire Captain Dennis Boic responded to a vegetation fire in a rural and remote area of Shasta County. There was a main fire, later called the Fawn Fire, and five separate, small fires. The small fires were in a line.

Boic saw Souverneva walking uphill near the top of the ridge between two of the small fires. Souverneva waved her hands and fell to the ground. She had a deer antler in one hand and her sandals in another. Her face and hair were dirty and she appeared to be in distress.

Responding to Boic's questions, Souverneva said she was hiking alone to Canada. She showed Boic a small $CO_2$ cartridge that she said was a bomb. She said fires were good for the environment because they help trees grow. Souverneva subsequently told firefighters that a device she had was a bomb but she made it safe by transferring its energy to the ground.

In her pockets Souverneva had small $CO_2$ containers, a pink-and-white device she described as an "incendiary device," batteries, a deer antler, and a functioning lighter. The $CO_2$ containers in Souverneva's pockets matched $CO_2$ containers found at a rock quarry road where workers reported seeing a woman matching Souverneva's description trespassing earlier that day. Witnesses reported the woman walked in the direction where the fire later started.

2

CAL FIRE Fire Captain Specialist Matthew Alexander determined, upon investigation, that four of the small fires were probable arson, intentionally set using a lighter. There was a small fire in a drainage area where Souverneva said she had been. Souverneva told Alexander she tried to boil the water to sterilize it. Alexander determined the main fire originated at a creek bed and it was started with an incendiary device, most likely a lighter. He opined that Souverneva was in the area where the main fire originated and she intentionally set that fire. The main fire burned intensely for three days.

Souverneva was charged with arson of forest land, and it was alleged the arson was committed during a state of emergency. Shortly thereafter, Souverneva's trial counsel declared a doubt as to her mental competency. The trial court appointed Dr. Robert Boyle and Dr. Don Stembridge to evaluate Souverneva and suspended the criminal proceedings. The doctors submitted written evaluations of Souverneva's competency to stand trial.

On November 16, 2021, the trial court found Souverneva not competent to stand trial and asked the Northern California Conditional Release Program (CONREP) to recommend a placement and treatment for Souverneva. Souverneva was committed to the Department of State Hospitals but was released on bail at some point.

On January 11, 2022, the trial court re-referred the matter to CONREP for recommendation regarding placement and treatment based on other treatment options available to Souverneva as she was out on bail. In a letter from Harper Medical Group, Inc., filed with the trial court on February 14, 2022, the Central Valley Conditional Release Program (CVCRP) recommended that Souverneva be referred to the California Department of State Hospitals for "competency training" in a locked setting. CVCRP opined that although she was out on bail, Souverneva continued to pose a significant risk to public safety.

3

On March 10, 2022, Souverneva's trial counsel objected to CVCRP's report and informed the trial court he believed Souverneva was restored to competency. The trial court appointed Dr. Stembridge to re-examine Souverneva, and a re-evaluation occurred on March 21, 2022. On April 7, 2022, the trial court found Souverneva competent and reinstated the criminal proceedings.

Following a preliminary hearing, the People filed an information charging Souverneva with six counts of arson of forest land during a state of emergency (§§ 451, subd. (c), 454, subd. (a)(2)). It was alleged that Souverneva caused multiple structures to burn (§ 451.1, subd. (a)); she committed crimes involving great violence (Cal. Rules of Court, rule 4.421(a)(1)) and an attempted or actual taking or damage of great monetary value (Cal. Rules of Court, rule 4.421(a)(9)); and she had sustained petitions in juvenile delinquency proceedings or prior convictions as an adult that were numerous or of increasing seriousness (Cal. Rules of Court, rule 4.421(b)(2)).

After entering a plea of not guilty, Souverneva requested pretrial mental health diversion under section 1001.36. She submitted a written evaluation by Dr. Kent Caruso in support of her request. Dr. Caruso had interviewed Souverneva on January 30, 2024. A few days before the hearing on her request, Souverneva also submitted evidence relating to treatment by a psychiatrist, Dr. Julius Fu, on February 21, 2024, and the psychiatric medication prescribed to treat her. There was no indication Souverneva had taken the medication. The People opposed Souverneva's request for pretrial mental health diversion, pointing to the harm she had caused and the risk that she might start another fire.

The trial court heard Souverneva's request on February 26, 2024. It denied the request, finding pretrial diversion created an unreasonable risk of danger that Souverneva would set a fire, causing damage to property and loss of life. Its finding was based on the reports of Dr. Stembridge, Dr. Caruso, and Harper Medical Group, Inc., and also based on Souverneva's statements to Fire Captain Boic. The trial court found Souverneva's

4

history showed she would not treat her mental illness and she was dangerous to the community as a result.

Souverneva filed the instant petition for writ of mandate challenging the trial court's order. We asked the People to file a preliminary opposition to the writ petition and subsequently issued an order to show cause. The People filed a return to the order to show cause and Souverneva filed a reply.

We ordered certain documents to be sealed upon applications from Souverneva and the People. However, the nature of Souverneva's petition for writ of mandate requires us to disclose a certain amount of information about her mental disorders and history. We disclose no more information than necessary to adjudicate her petition.

## DISCUSSION

### I

As a threshold matter, the People contend writ review is not available because Souverneva has an adequate remedy at law in the form of an appeal from the judgment.

"An order denying diversion is a preliminary determination from which no provision is made for interlocutory review but which is subject to review on appeal from a judgment in the criminal proceedings." (*Morse v. Municipal Court* (1974) 13 Cal.3d 149, 155 [involving a drug education and treatment diversion statute]; accord, *Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 700 [involving a treatment and rehabilitation diversion statute for members of the United States military suffering from certain conditions as a result of military service].) However, relief by writ of mandate may be available "where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086; *Morse*, at p. 155; *Wade*, at pp. 706-707.) Factors such as the expense of proceeding to trial, and the prejudice resulting from delay, may make an appeal from a judgment an inadequate remedy. (*Phelan v. Superior Court of San Francisco* (1950) 35 Cal.2d 363, 370; see *Shuford v. Superior Court of Orange County*

5

(1974) 11 Cal.3d 903, 907; *City of Huntington Beach v. Superior Court* (1978) 78 Cal.App.3d 333, 339.)

The purposes of pretrial diversion under section 1001.36 include "[i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety" and to provide persons with mental disorders diversion that meets their treatment and support needs. (§ 1001.35.) Pretrial diversion allows for postponement of prosecution to allow the defendant to undergo mental health treatment and dismissal of the criminal charges if the defendant performs satisfactorily in diversion. (§ 1001.36, subds. (f)(1), (h).) Thus, section 1001.36 offers persons with a qualifying mental health disorder " ' "dramatically different and more lenient treatment." ' " (*People v. Doron* (2023) 95 Cal.App.5th 1, 7.) Souverneva contends appeal from the judgment after the trial of the current offenses is not an adequate remedy because if she is required to wait until after a trial to obtain review of the trial court's denial order, she will be forced to bear the expense of a trial and, if convicted, would likely be incarcerated during a potentially years-long appeal. She further argues the trial court's reliance on *People v. Pacheco* (2022) 75 Cal.App.5th 207 (*Pacheco*) in denying her request for pretrial diversion could establish "a new judicially created rule of exclusion from mental health diversion for arson cases."

Under the circumstances present, and in light of the purposes of section 1001.36, we will address Souverneva's writ challenge on the merits and not require her to wait for an appeal from the judgment.

II

Souverneva contends the trial court's finding that she would pose an unreasonable risk of danger to public safety is not supported by substantial evidence and, therefore, constitutes an abuse of discretion.

Except in cases involving offenses not at issue here, a trial court may, in its discretion, grant pretrial mental health diversion to a defendant if the defendant satisfies

the eligibility criteria in section 1001.36, subdivision (b) and the trial court determines that the defendant is suitable for diversion under the factors in subdivision (c). (§ 1001.36, subd. (a).) A defendant is eligible for pretrial diversion if the defendant has been diagnosed with a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders and the mental disorder was a significant factor in the commission of the charged offense. (§ 1001.36, subd. (b).) A defendant is suitable for pretrial diversion if (1) in the opinion of a qualified mental health expert, the symptoms of the defendant's mental disorder would respond to mental health treatment; (2) the defendant consents to diversion and waives his or her speedy trial rights; (3) the defendant agrees to comply with treatment; and (4) the defendant will not pose an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in the community. (§ 1001.36, subd. (c).) Only the fourth suitability factor is at issue here.

"Unreasonable risk of danger to public safety" refers to the likelihood that the defendant will commit one of the violent felonies enumerated in section 667, subdivision (e)(2)(C)(iv), known as "super strikes," including murder committed in the perpetration of arson. (§§ 1001.36, subd. (c), 1170.18, subd. (c), 667, subd. (e)(2)(C)(iv); *People v. Graham* (2024) 102 Cal.App.5th 787, 798-799 (*Graham*); *Pacheco, supra*, 75 Cal.App.5th at p. 213.) When determining whether the defendant will pose an unreasonable risk of danger to public safety, the trial court may consider the opinions of the prosecutor, the defense, or a qualified mental health expert; the defendant's treatment plan; the defendant's violence and criminal history; the current offense; and any other factors the trial court deems appropriate. (§ 1001.36, subd. (c)(4); accord, *Graham*, at p. 796 [the trial court may consider any relevant and credible evidence].)

Diversion under section 1001.36 is discretionary, even if all the statutory requirements are met. (*People v. Doron, supra*, 95 Cal.App.5th at p. 9; *People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149.) We review the trial court's order denying a

request for mental health diversion for abuse of discretion. (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 887.) " 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence [citation].' " (*Graham, supra*, 102 Cal.App.5th at p. 795; accord, *Qualkinbush*, at p. 887.) In assessing whether the trial court's findings are supported by substantial evidence, we view the evidence in the light most favorable to the trial court's order and presume in support of the order the existence of every fact it could reasonably deduce from the evidence. (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1079.) We determine whether there is evidence that is reasonable, credible, and of solid value supporting the trial court's findings. (*Ibid.*) We do not reweigh evidence. (*Ibid.*) The appellant bears the burden of establishing an abuse of discretion. (*Pacheco, supra*, 75 Cal.App.5th at p. 213.)

Souverneva suggests the trial court made a blanket exclusion of arson cases from pretrial mental health diversion. But the trial court expressly stated it did not deny Souverneva's request because she was charged with arson. Rather, it denied diversion because she posed an unreasonable risk of danger to public safety.

The record indicates that at the time of the hearing, Souverneva had been out of custody on bond for over two years, apparently without incident, and had sought treatment for her bipolar disorder. Nevertheless, substantial evidence supports the trial court's finding of an unreasonable risk to public safety.

A trial court may consider the defendant's treatment plan and criminal history in assessing the defendant's suitability for pretrial diversion. (§ 1001.36, subd. (c)(4).) Here, Souverneva's treatment plan did not address her alcohol, cannabis, and hallucinogen use disorders. Souverneva started drinking alcohol and smoking marijuana as a teenager. She drank alcohol excessively by age 18, drinking less while in college, but drinking heavily after her psychiatric hospitalization in 2015 and until 2018. She

smoked marijuana daily during graduate school and when she was part of a group she labeled a "cult." She was part of that group from October 2020 to July 2021. During that period, she also occasionally ingested psychedelic mushrooms and peyote. Souverneva argues that inferring future dangerousness based on past marijuana use is error, and there was no evidence of violent conduct. But Souverneva's use of alcohol and marijuana resulted in her 2017 arrest for driving under the influence of alcohol and hit and run, and four years later, her arrest for driving under the influence of marijuana, offenses that endangered the lives of others. (See generally *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1510.) Dr. Stembridge opined that Souverneva met the Diagnostic and Statistical Manual of Mental Disorders V criteria for alcohol use disorder, cannabis use disorder, and hallucinogen use disorder. He opined that Souverneva's use of marijuana and hallucinogens most likely contributed to her psychotic break in 2021, resulting in the current offenses. Dr. Caruso likewise opined that at the time of the alleged arson, Souverneva "was experiencing a psychotic episode" and had lost contact with reality. Additionally, Dr. Caruso said Souverneva's bipolar disorder cycled between manic and depressed episodes; Souverneva used marijuana to slow down her manic episodes; and marijuana likely caused Souverneva to detach from reality, leading to extremely erratic behavior. Harper Medical Group, Inc.'s February 7, 2022 assessment further stated that Souverneva's records showed a "serious substance abuse addiction" that was not being treated, compromising Souverneva's ability to manage her mental illness and reduce her risk of harm to the community. Although regular testing showed Souverneva remained substance-free while on bail, there was no indication that Souverneva sought treatment for her cannabis, hallucinogen, or alcohol use disorder to reduce the risk of recurrence of the symptoms of her mental disorder. (Cf. *Whitmill, supra*, 86 Cal.App.5th at pp. 1151-1152 [concluding there was no substantial evidence defendant posed an unreasonable risk to public safety where, among other things, his proposed mental health diversion plan included treatment of his mental disorder and substance abuse disorder].) Souverneva

9

asserts in her writ petition that her proposed treatment plan includes services "aimed at removing cannabis from her life."  But the exhibit she cites does not support that assertion.

In addition, the reports of mental health experts showed Souverneva's poor performance in past treatment.  In 2015, after being diagnosed with bipolar disorder with psychotic features, paranoia, and grandiose-type delusions, Souverneva was prescribed different psychotropic medications but said none of them worked.  She received no psychiatric treatment thereafter until her 2021 arrest for the current offenses.  Various symptoms persisted, however, and from 2019 to 2021 she was often highly symptomatic and experienced paranoid and grandiose delusions.  She was very paranoid and expressed delusional thoughts and suicidal ideation when she was initially held at Shasta County Jail for the current offenses.  She was prescribed antipsychotic medication at the jail, but took them only intermittently and then stopped taking them altogether.  In October 2021, Souverneva told Dr. Stembridge she did not need psychiatric medication and that marijuana helped her the most.  Harper Medical Group, Inc.'s February 7, 2022 report stated that Souverneva's refusal of mental health services at Shasta County Jail made her "a high risk for community safety" because of the risk of recidivism.  In March 2022, although she was seeing a psychologist and had been evaluated by a psychiatrist, Souverneva was still not taking any psychiatric medication.  She admitted to Dr. Stembridge she was quite depressed but expressed a preference to continue recovering without use of psychiatric medication.  In late January 2024, Dr. Caruso opined that Souverneva was at least moderately depressed but there was no indication Souverneva had sought treatment for depression.  Souverneva contends her prior refusal to take medication is not predictive of whether she would now accept treatment.  But in deciding whether Souverneva presented an unreasonable risk to public safety, it was entirely proper for the trial court to consider Souverneva's past participation in treatment. (*Whitmill, supra*, 86 Cal.App.5th at pp. 1151-1152.)

10

It was also proper for the trial court to consider the nature of the current offenses. (§ 1001.36, subd. (c)(4).) Souverneva told Fire Captain Boic fires were good for the environment, and she was found walking in the area of the fires and possessed a working lighter and items she identified as a bomb and an incendiary device. Souverneva acknowledged that wildfires can cause loss of life. (*Association of California Ins. Companies v. Jones* (2017) 2 Cal.5th 376, 382 ["Wildfires are a fact of life in California, and so, too, are the threats they pose to people and property."]; *Pacheco, supra*, 75 Cal.App.5th at p. 209.) In light of the severe potential consequences of starting wildfires, Souverneva's statement to the fire captain, Souverneva's failure to address her substance abuse, Dr. Caruso's opinion that marijuana use would likely cause Souverneva to detach from reality, and Souverneva's history of not complying with treatment, the trial court did not abuse its discretion in finding that granting Souverneva pretrial diversion would pose an unreasonable risk that she would start a wildfire and cause loss of life.

## DISPOSITION

The petition for writ of mandate is denied.


                                        /s/                                                                    
MAURO, J.


We concur:


/s/
EARL, P.J.


/s/
ROBIE, J.

11